JOHNSON, Respondent, vs. ANDREASSEN, Appellant.

*March 14—April 12, 1938.*

For the appellant there were briefs by *Wiley, Wiley & Wiley* of Chippewa Falls, and oral argument by *Alexander Wiley*.

For the respondent there was a brief by *W. H. Stafford* and *Harold E. Stafford,* attorneys, and *Marshall Norseng*

of counsel, all of Chippewa Falls, and oral argument by *Harold E. Stafford.*

WICKHEM, J.   At the time of the gift sought here to be set aside, plaintiff was eighty-five years of age, and was living in the city of Bloomer with her son, Albert Johnson, under a support agreement made in consideration of the conveyance by plaintiff of certain property to the son.   Two or three days prior to May 27, 1936, plaintiff called upon her daughter, the defendant, bringing with her certain of her private papers.   These included certificates of stock in the Bloomer Farmers Store Company, representing one thousand one hundred fifty-nine shares of the corporate stock of this corporation; one certificate of Bloomer Telephone Company stock for twelve shares; a note and mortgage to plaintiff in the principal sum of $1,000 executed by one Fink; a note of Albert Johnson payable to plaintiff in the sum of $1,000; and papers indicating a loan to Oscar Johnson of $200, and one to Albert Johnson of $600. Plaintiff had a talk with defendant, and whatever the import of it actually was, it is undisputed that defendant's husband came home during this talk and suggested that the parties have legal advice to accomplish their purposes.   Plaintiff handed the stock certificates to defendant's husband, who took them to the office of Mr. Velten, an attorney, and explained to Velten that plaintiff proposed to give the Bloomer store stock to defendant, but wanted to reserve the income during her life.   Velten instructed defendant's husband as to the method of carrying out this purpose, and defendant's husband brought the message home to plaintiff and defendant.   Thereafter, defendant, in the presence of plaintiff, called Velten and told him to fix up the papers.   Plaintiff then returned to her home, and Velten prepared the assignments.   On May 27th, both Velten and plaintiff came to defendant's home, and Velten talked to plaintiff in the pres-

ence of defendant to ascertain if plaintiff understood what she was doing. The assignments were read and explained to her, and plaintiff told Velten that defendant was to have the store stock, subject to a reservation of the income for life to her, that her son Oscar was to have the Fink note and mortgage, and that defendant was to have the Bloomer telephone stock without any reservation. Plaintiff then signed the seven certificates of stock and the assignment of the note and mortgage, authorized Velten to record the assignment, get the new certificate of stock, and give the note and mortgage when recorded to defendant so that the latter could send it to Oscar. The transaction was fully completed. At the time of the transaction it was suggested by Velten that a memorandum be made by plaintiff of her purpose in executing the gift, and on September 23, 1936, nearly four months after the transaction, plaintiff and her daughter went to Velten's office and executed a statement in affidavit form reciting the assignments; that these were made at her request and of her own free will and for the purpose of more nearly equalizing the share of defendant and Oscar Johnson with that of her son Albert Johnson in the estate of their deceased father. In April, 1937, plaintiff's son Albert stopped Mr. Velten on the street and asked him if he had made a will for his mother. Velten said "No." Later on, Albert came to Velten's office and asked for a disclosure as to what had been done. Velten said it was confidential, but he would be willing to explain in the presence of the mother if she authorized disclosure. Several days later Albert and his mother met with Mr. Velten, and he explained what had taken place. Thereafter, the controversy began and culminated in this action.

Defendant's first contention is that certain testimony of Mr. Velten was erroneously excluded. Velten testified to three transactions or occasions, and with respect to each of

these plaintiff contended and the trial court held that what plaintiff said to him on these occasions was privileged as a communication between attorney and client. We think the ruling erroneous. The evidence does not sustain the conclusion that Velten acted merely as attorney for plaintiff but rather that he acted for both in the transaction. He was called by and at the suggestion of defendant's husband to advise plaintiff and defendant generally as to the means by which the transfer could lawfully be accomplished. He conferred with both parties and testified that he considered himself to be acting for both. Plaintiff herself does not testify that he was her attorney exclusively. Further than this, the excluded communications were made in the presence and hearing of defendant. Under these circumstances plaintiff's communications to Velten were not privileged. Wigmore, Code of Evidence, p. 432; *Dunn v. Amos,* 14 Wis. *106; *Allen v. Ross,* 199 Wis. 162, 225 N. W. 831. See also note, 64 A. L. R. 201.

It is next contended that the findings of fact are against the great weight and clear preponderance of the evidence. This contention must also be sustained. It will be remembered that the complaint charged that defendant had misrepresented that the papers signed by plaintiff constituted a will, and that plaintiff signed them under the impression that she was executing a will. There is not a scintilla of evidence to sustain this charge. Neither is there any evidence that the papers were brought to defendant for safekeeping. We discover no evidence whatever of undue influence. Plaintiff herself took the initiative in the transaction, and there is no evidence that defendant ever did anything to induce plaintiff to give her this property. The result of the transaction in view of the fact that the income was reserved to plaintiff during her lifetime and that plaintiff's son, Albert, had already received as consideration for the

support agreement a large part of plaintiff's property, and that she had released this property from the lien of the agreement, makes it neither unnatural nor unfair that some provision be made for plaintiff's daughter during plaintiff's lifetime. Plaintiff makes no contention that she did not mean to give the Fink mortgage to Oscar, and this was a part of the same transaction. We find no evidence of undue influence or the disposition to exercise it, and no result indicating its exercise. This being true, the fact that there might be some slight opportunity to exercise such influence or that plaintiff, due to her advanced years, might have been susceptible to such influence, are not enough to establish a case for plaintiff. The evidence as to plaintiff's mental incompetency is much too meager to support a finding of incompetency. About all there is to support it is plaintiff's own testimony that she had not felt well mentally for some time, and her constant plea that she could not remember the transaction. It is an admitted fact, however, that she handled her own affairs down to the time of the trial, and she was offered as a competent witness and her testimony did not indicate mental incapacity. When there is added to the record as the court considered it the testimony of Mr. Velten which is unimpeached and disinterested, there is nothing left of plaintiff's contention that she was incompetent or unduly influenced or that she was mistaken as to the nature of the transaction. It is undisputed that plaintiff went to defendant's husband of her own accord and suggested that some transaction be had with respect to the papers in her possession; that legal advice was sought and given on that day, and that plaintiff returned two or three days later to complete the transaction; that several months later she signed a statement in affidavit form indicating an understanding of the transaction and its purpose. The evidence of Velten is that she was carefully examined as to her purposes and her understanding of the papers, that their signifi-

cance and effect was fully explained, and that she did understand what transpired. Her own testimony, which consists almost entirely of repeated assertions that she does not remember what happened, is not convincing and is as a matter of law insufficient to establish anything. She remembers her intention to give her son Oscar the Fink note and mortgage; she remembers that Mr. Velten was at the house; but she fails to recall that she gave the stock to defendant. She fails to explain her purpose in bringing the papers to her daughter or to account for the presence of Velten. Significant, however, is her answer to these questions:

"*Q.* When you signed your name to these certificates of stock, seven of them, what did you think you were doing? *A.* I don't think I think a bit. I think it over a little later and I know I done wrong.

"*Q.* When did you think that over? *A.* I was sorry I did it, that's all. What could I do then?

"*Q.* And you didn't tell Jennie until in April, almost a year later that you wanted the stock back, is that right? *A.* Yes. Maybe I waited too long. I thought there was not any wrong that she keep it."

Plaintiff had the burden of proving some circumstance, such as fraud, mistake, undue influence, or mental incompetency, legally effective to upset this transaction which was fully executed so far as its formal aspects are concerned. It is our conclusion that she wholly failed to meet this burden. The evidence is rather to the effect that she regretted having made the gift because of later fears that she would need the principal at some time during her lifetime. This is not the sort of situation in which the law grants relief in the case of a fully completed gift. We are compelled to conclude that the trial court's findings are not supported by the evidence and must be set aside.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss plaintiff's complaint.