BOYLE and others, Respondents, vs. KEMPKIN, Administrator, and others, Appellants.*

*April 12—May 18, 1943.*

* Motion for rehearing denied, with $25 costs, on July 27, 1943.

For the appellants there were briefs by *Ruzicka & Fulton* of Burlington and *Vilas H. Whaley* of Racine, and oral argument by *Mr. R. M. Fulton.*

*Charles F. Millmann* of Milwaukee, for the respondents.

FAIRCHILD, J.   Under the facts of the case as stated above, we must determine whether a valid irrevocable trust was created or whether this was only an arrangement for a testamentary disposition of Giesing's property.   While trusts frequently have what Mr. Justice HOLMES described as "a very testamentary look" (*Bromley v. Mitchell,* 155 Mass. 509, 30 N. E. 83), still the distinction between an intention to create a trust *inter vivos* and one to arise only on the death of the settlor which is invalid unless the requirements of the statute of wills are followed is discernible.

The land in question is in Wisconsin and the validity of the trust in this regard must be determined by the law of the situs of the land, Wisconsin.   Restatement, Conflict of Laws, p. 326, sec. 241.   The agreement as drawn creates a passive trust as to the life estate of the settlor.   A trust "for the benefit of" a *cestui* is a passive trust.   1 Bogert, Trusts and Trustees, p. 589, sec. 206.   In Wisconsin all passive trusts are abolished and the legal title goes to the beneficiary.   Sec. 231.05, Stats.; *Hannig v. Mueller,* 82 Wis. 235, 52 N. W. 98; *Sullivan v. Bruhling,* 66 Wis. 472, 29 N. W. 211; *Riehl v. Bingenheimer,* 28 Wis. 84.   Under the so-called trust agreement, then, Giesing's life estate became a legal rather than an equitable interest because no active duties were given to the trustee to perform.

When a trust is passive for a period, the use is executed for that period.   Restatement, 1 Trusts, p. 213, sec. 69, comment *c.*   The legal title to the life estate remained in Giesing but the deed to the trustee did pass to him the remainder.   In the case of a partially passive trust only so much of the title is left in the trustee as is necessary to enable him to perform his duties.   Here the remainder in fee vested in him presently so

that on the death of the settlor he could sell the land and divide the proceeds as directed by the settlor. See 1 Scott, Trusts, pp. 418, 419, sec. 69.2; *Highland Park Mfg. Co. v. Steele* (4th Cir.), 232 Fed. 10; *Steele v. Smith,* 84 S. C. 464, 66 S. E. 200, 29 L. R. A. (N. S.) 939. Giesing made a conveyance of the fee, but the statute executed the trust for his life. This left a remainder in the trustee. This is clearly demonstrated by an illustration in the Restatement of Trusts:

"A, the owner of Blackacre, by a conveyance not operating under the Statute of Uses, transfers Blackacre to B and his heirs to the use of C for life and after C's death in trust to sell Blackacre and divide the proceeds among C's children. The trust for C being passive, it is executed by the statute; the trust for C's children being active, it is not executed by the statute. C has a legal estate for life; B has a legal remainder in fee simple which he holds in trust for C's children." (Sec. 69, illus. 4.)

The trustee during the life of the settlor held the remainder in which the beneficiaries had vested equitable interests. Since there was a present conveyance of this future interest, passing the remainder in fee to the trustee and vesting the equitable remainders in the plaintiffs, although enjoyment was postponed until the death of the settlor, the trust was not testamentary. See Restatement, 1 Trusts, p. 167, sec. 56.

A valid trust having been set up, the settlor and the trustee by mutual agreement could not cut off the rights of the beneficiaries which vested on the delivery of the deed. The deed which the trustee gave to Giesing, being in contravention of the trust, was void. Sec. 231.21, Stats. A trust is irrevocable unless the power to revoke is reserved. No such power being reserved, at least in so far as the land is concerned, Giesing's attempted revocation must be held to have been ineffectual. Whether or not he believed he could get the land back later if he so desired, nothing that was done at the time the trust was set up indicated a determination to reserve that right.

This brings us to the trust of the bank account in the bank at Escanaba, Michigan. The bank account being in Michigan

and the trustee domiciled there and the agreement having been executed there, the law of Michigan controls as to the validity of the trust of the bank account. See Restatement, Conflict of Laws, p. 376, sec. 294 (2); Professor Beale in 45 Harvard Law Review, 969, 970. The settlor did not convey complete legal title to the account to the trustee, but rather made the account into a joint account payable to himself and Warmington as trustee or the survivor. The question arises as to whether there was a valid trust created. The trustee did not get the whole title to the account until Giesing's death, but he got a present interest in the account as joint tenant. That such an arrangement is not void as a testamentary disposition under the law of Michigan seems clear from the case of *People's State Bank of Holland v. Miller's Estate,* 198 Mich. 783, 165 N. W. 608. Giesing could have ended the trust by withdrawing the whole account at any time before he died, but in Michigan, so long as title passes to the trustee, the extent of control retained by the settlor seems to be immaterial. *Rose v. Rose,* 300 Mich. 73, 1 N. W. (2d) 458; *Goodrich v. City Nat. Bank & Trust Co.* 270 Mich. 222, 258 N. W. 253. We conclude that a valid *inter vivos* trust was created.

Giesing did not withdraw the money from the bank, but he attempted to revoke the trust. Did the reservation of the right to withdraw the full account amount to a reservation of the general power to revoke? We are of the opinion that it did. A power to revoke may be implied from the language of the trust instrument. 3 Scott, Trusts, pp. 1796, 1797, sec. 330.1. It has been held that where the settlor reserved the right to increase or decrease the trust fund, this amounted to a reservation of the general power to revoke. *Trenton Banking Co. v. Howard* (N. J. Ch.), 187 Atl. 569, affirmed in 121 N. J. Eq. 85, 187 Atl. 575. In so-called savings-bank trusts, it has been held that the settlor-trustee may revoke in any way he chooses, that he is not limited to revocation by

withdrawal of the whole account. See 1 Scott, Trusts, p. 362, sec. 58.4. It would seem clear, then, that here the settlor reserved the right to revoke the trust of the savings account and that he exercised this power.

Since the settlor reserved the power to revoke a part of the trust by withdrawing part of the *res,* there can be no doubt that he intended that such a withdrawal should not affect the validity of the rest of the trust. This is not a case where part of the trust was held invalid. See *Gardner v. Bank & Trust Co.* 267 Mich. 270, 255 N. W. 587. Here part of the *res* was withdrawn, as the settlor provided, but he also provided that if there was not enough to pay the gifts in full, they should abate *pro rata.* The trust of the land being valid, we must hold that it remained in force although the trust of the bank account was revoked.

We have gone on the assumption that the existence of the agreement was proved. Some question is raised as to the competency of the testimony in this respect. It seems clear from the Wisconsin cases that even if the attorney for the trustee and the bank should not have testified, and we think this doubtful in view of his passive role in the trial, still his competency was unaffected. *Will of Cieszynski,* 207 Wis. 353, 241 N. W. 364; *Interior Woodwork Co. v. Buhler,* 207 Wis. 1, 238 N. W. 822. Where an attorney is acting for both parties in drawing up an instrument, the communications made to him are not privileged. *Johnson v. Andreassen,* 227 Wis. 415, 278 N. W. 877. His testimony was sufficient to establish the execution of the agreement.

The record shows that Joseph Kempkin bought the other undivided one-third interest in the real estate and took the quitclaim deeds from Giesing's heirs with actual notice of the trust agreement. He acquired only an undivided one-third interest. There was no error in the trial court's direction that

he account to the trustee, his cotenant, for the rents and profits. Sec. 234.21, Stats.

*By the Court.*—Judgment affirmed in part and judgment reversed so far as it holds the trust of the personal property unrevoked, and cause remanded with directions to enter judgment in accordance herewith.