ESTATE OF FEELEY: POFAHL and another, Appellants, vs. FEELEY, Respondent.

*June 9—July 1, 1948.*

For the appellants there was a brief by *Johns, Roraff & Coleman,* and oral argument by *Peter G. Pappas* and *Leonard Roraff,* all of La Crosse.

For the respondent there was a brief by *Crosby, Schneider & Esch* of La Crosse, and oral argument by *Fred R. Schneider* and *Frederic W. Crosby.*

MARTIN, J.    It is well settled by this court that the elements to be proved in order to establish the facts of undue influence are:

"(1)  A person unquestionably subject to undue influence;
"(2)  Opportunity to exercise such influence and effect the wrongful purpose;
"(3)  A disposition to influence unduly for the purpose of procuring an improper favor; and
"(4)  A result clearly appearing to be the effect of the supposed influence."    *Will of Raasch* (1939); 230 Wis. 548, 557, 284 N. W. 571, and cases therein cited.    *Will of Faulks* (1945), 246 Wis. 319, 17 N. W. (2d) 423.

1.  *A person unquestionably subject to undue influence.*

From the facts set out above there is ample evidence to sustain the findings of the trial court that Amalia Feeley was a person unquestionably subject to undue influence.    The trial court found:

"7. That Amalia Feeley suffered from a mental illness.

"8. That such mental illness made her subject to undue influence in that she had a greater degree of passivity toward her affairs than a normal person would have.

"9. That Amalia Feeley was seriously ill at all times after June, 1941, and during the period from November 4, 1946, through November 12, 1946, was very sick and in a weak physical condition."

The above findings are supported by the evidence. *Will of Keith* (1933), 213 Wis. 167, 250 N. W. 382.

2. *Opportunity to exercise such influence and effect the wrongful purpose.*

The opportunity to exercise such undue influence is admitted.

3. *A disposition to influence unduly for the purpose of procuring an improper favor.*

The trial court in its findings stated:

"10. That early in November, 1946, at the urging and request of her mother, Helen Lehrke, and her sister, Gertrude Pofahl, she consented to go to La Crosse, ostensibly for the purpose of going from La Crosse to the Mayo Clinic at Rochester, Minnesota, for medical treatment. That in response to such urging Amalia Feeley left Chicago on the night of November 3, 1946, and arrived at La Crosse on the morning of November 4, 1946, at which time she was physically and mentally ill.

"11. That on November 4, 1946, Amalia Feeley wrote a friendly and affectionate letter to her husband, James Feeley.

"12. That at all times after November 4, 1946, until Amalia Feeley was hospitalized just before her death, Amalia Feeley stayed at the home of her mother, Helen Lehrke, and sister, Lydia Lehrke, and was in constant association with them and the sister, Gertrude Pofahl, who lived directly across the street from the mother.

"13. That from the period after Amalia Feeley arrived in La Crosse on November 4, 1946, and to the time of the making of the will, her associations were almost exclusively with Helen Lehrke, Lydia Lehrke, and Gertrude Pofahl.

"14. That on November 12, 1946, Amalia Feeley, in the company of her sister, Gertrude Pofahl, went to the office of Leonard F. Roraff, an attorney of La Crosse, Wisconsin. That Amalia Feeley had never before consulted with the said Leonard Roraff, nor was she acquainted with him, but in fact said Leonard Roraff was the attorney for and had been consulted professionally by the sister, Gertrude Pofahl.

"15. That the said Amalia Feeley and Gertrude Pofahl consulted with the said attorney ostensibly for the purpose of preparing Amalia Feeley's will. That Gertrude Pofahl remained constantly in attendance with the attorney and with Amalia Feeley at all times during the discussion of the terms of the will, while the will was being prepared, and while the same was being signed and executed, and at no time did the attorney discuss the terms of the will with Amalia Feeley, away from the presence of Gertrude Pofahl.

"16. That Gertrude Pofahl was the principal beneficiary under the instrument prepared and signed on that day and that the said instrument made bequests to Helen Lehrke, the mother, and Lydia Lehrke, another sister, all of whom lived in La Crosse, Wisconsin, and made no provision for other sisters and the brother of the said Amalia Feeley. The provision for the husband, James Feeley, was a life estate in the home that had been purchased by him out of his earnings.

"17. That the existence of this instrument was kept secret by Helen Lehrke and Gertrude Pofahl until subsequent to Amalia Feeley's death.

"18. That the will was kept by Helen Lehrke shortly after it was made, until after the death of Amalia Feeley.

"19. That subsequent to November 22, 1946, no medical attention was given to Amalia Feeley except such as was arranged for in La Crosse by her husband, James Feeley.

"20. That Helen Lehrke acted to keep James Feeley from access to his wife in that she refused to allow him to come to the home in which Amalia Feeley was staying.

"21. That on the 12th day of February, 1947, when James Feeley attempted to visit his wife, Helen Lehrke shut the door in his face and would not allow him entrance.

"22. That although James Feeley had been a welcome guest at the Lehrke home in La Crosse over the twenty-year period of his married life, after the will was written he was told by

Helen Lehrke that he was no longer welcome, and she denied him admittance to the Lehrke home.

"23. That James Feeley had been the loving and affectionate husband of Amalia Feeley for over twenty years.

"24. That the only property which he owned was an undivided one-half interest in joint tenancy with Amalia Feeley in their home in Chicago.

"25. That he is a disabled veteran of World War I.

"26. That he loyally stood by Amalia Feeley during her years of illness and affliction, and provided for her care and comfort."

These are amply sustained by the evidence set forth in the statement of facts.

In this state undue influence is considered as a species of fraud and must be established by clear, convincing, and satisfactory evidence. *Will of Schaefer* (1932), 207 Wis. 404, 411, 241 N. W. 382, and cases therein cited.

"Undue influence 'cannot be presumed from conjecture or suspicion without reasonable and satisfactory proof of facts establishing the contrivance and undue influence.'" *Will of Wallace* (1928), 197 Wis. 323, 326, 222 N. W. 255.

Here the evidence is clear, convincing, and satisfactory and supports the conclusion that undue influence was exerted on the testatrix.

4. *A result clearly appearing to be the effect of the supposed influence.*

It is clearly established that Amalia and James Feeley were happily married for twenty years. He purchased out of his earnings the apartment dwelling in which they lived in Chicago. At various times he worked on property owned by the testatrix in La Crosse which she inherited from her father. He was loyal to her during her years of illness and affliction and provided her with care and comfort. When Amalia Feeley arrived in La Crosse on November 4, 1946, she wrote her husband an affectionate letter. Eight days later a will was drawn in which the following provisions were made with reference to her husband:

"First: In the event that I die seized of any interest in the home in which I live located at 4202 North Whipple street, Chicago, Illinois, I give such interest to my nephew Frederick Lehrke, subject to a life estate in favor of my husband James Harold Feeley. In the event that my husband fails to pay the taxes on the said premises and fails to keep the said premises in reasonable repair, then such life estate shall terminate, and such interest shall vest immediately in my nephew Frederick Lehrke."

It is immaterial how testatrix received the title to the home but it is reasonable to assume that without the undue influence the husband would have received considerably more of the estate of the testatrix.

The will then proceeds to divide the property among the La Crosse members of the Lehrke family. The property of the greatest value went to Gertrude Pofahl, second greatest to Helen Lehrke, and that of less value to Lydia Lehrke. Gertrude Pofahl and Lydia Lehrke, the proponents here, were also named in the will as executors and trustees. The two sisters of Amalia Feeley who lived away from La Crosse are completely ignored.

The trial court in its findings of facts stated:

"27. That Gertrude Pofahl exhibited a disposition to dominate the affairs of Amalia Feeley by arranging chiropractic care for her, by recommending the attorney to draw her will, and canceling appointment made by James Feeley for the medical care of his wife. That Helen Lehrke and the Lehrke daughters owned considerable property, and had an extraordinary interest in inheritances and possession of property."

"Where three of the elements are established by clear and satisfactory evidence, slight additional evidence as to the fourth may compel the inference of its existence." *Will of Raasch* (1939), 230 Wis. 548, 557, 284 N. W. 571, and cases therein cited.

It was held in *Will of Keith* (1933), 213 Wis. 167, 250 N. W. 382, that unless the findings of the trial court are against the great weight or clear preponderance of the evidence, we are not warranted in disturbing them.

Since the court found that undue influence had been exercised and since findings of trial courts are not to be disturbed on appeal unless they are against the great weight and clear preponderance of the evidence, the judgment of the trial court must be affirmed.

*Attorneys' fees.*

The order of the trial court allowing attorneys' fees and costs to the attorneys for James H. Feeley is proper because it is in compliance with sec. 324.13(1), Stats.

*By the Court.*—Judgment and order affirmed.