DOBBIN, Respondent, vs. COSTELLO, Appellant.

*January 20—February 15, 1949.*

*Matt Taylor* of Kenosha, for the appellant.

For the respondent there was a brief by *Lepp & Phillips,* and oral argument by *Charles A. Lepp,* all of Kenosha.

FAIRCHILD, J.  Plaintiff has a judgment in her favor based on a conclusion that the deed in question was obtained by undue influence.  The trial court found that that contention was sustained by a preponderance of the evidence.  However, the rule is that undue influence being a species of fraud, must be proved by clear, convincing, and satisfactory evidence. *Estate of Feeley*, 253 Wis. 204, 33 N. W. (2d) 139.  The requirement is not met by the evidence relied on to establish undue influence in this case.  It fails to show that plaintiff was at the time a person unquestionably subject to undue influence; or that the opportunity to exercise such influence and effect the wrongful purpose existed.  When all the evidence is judged with the controlling rule in mind it also fails to show a disposition to influence unduly for the purpose of procuring an improper favor or a result clearly appearing to be the effect of the supposed influence.  *Estate of Feeley, supra,* p. 210; *Johnson v. Andreassen,* 227 Wis. 415, 278 N. W. 877.

Plaintiff's attorney argues that plaintiff was a person unquestionably subject to undue influence at the time the deed was made because she was old and physically and mentally ill. The testimony of the doctor who saw her two days before the deed was made and the lawyer who drew up the deed, both impartial witnesses, is to the effect that she was competent.  The doctor testified : "There was no question about any mental treatment. . . . I just know this, that I did have difficulty in trying to convince her she needed hospitalization. . . . I thought she understood what I was telling her."  Mr. Mittelstaed, an experienced and highly regarded lawyer, testified that she expressed satisfaction with the method of handling the transaction and he was satisfied that she understood what she was doing.  He said : "She seemed sickly but . . . her mentality seemed normal to me."  He also testified : "I discussed with her the request of Mr. Dobbin to transfer the title and asked her if she understood what was to be done and she said that she did and that is what she wanted done.  I told her the thing to do was to convey the title . . . to a girl

in our office and then from her back to Mr. and Mrs. Dobbin and Miss Costello jointly."

The testimony of the other witnesses can be considered only as establishing the fact that the plaintiff was a very unreasonable woman who was very hard to get along with. The testimony of several witnesses that she swore a great deal; or the testimony of George Adamson, the town assessor, that: "She said, 'Can't you make your living without going around making people pay taxes?' She called me a thief;" or the testimony of Alfred Hanson that: "She called me a dirty rat, and told me to get off the place," established neither the fact that she was incompetent to make the deed or that she was a person unquestionably subject to undue influence. In fact she appears from the evidence to be the kind of person over whom no one had much control or influence.

As to opportunity to exercise such influence and effect the wrongful purpose, it also appears, according to the testimony of the plaintiff, that the defendant did not have a conversation with the plaintiff immediately before the transfer of the property or when the deed was signed. Plaintiff testified: "Never said a word about property. Not a word." There is, however, a vague statement in the testimony of Martin Dobbin: ". . . so, when she went home that day, she said to my wife, she said, 'If you don't have this thing signed now, I will never speak to you again.' She said, 'or if you make a fool of me.' "

The deed as drawn runs to Mary E. Dobbin, Martin Dobbin, and Viva E. Costello and to the survivors or survivor of them. Defendant's testimony is to the effect that this plan was suggested by Martin Dobbin. She testified that in December of 1945, Martin Dobbin brought up the subject of the farm and suggested that it be placed in joint tenancy. Her aunt wanted to deed it to her, she said, but Martin said he'd listen to nothing but a joint tenancy.

It cannot be held upon all the evidence that defendant sought or secured an opportunity in which to exercise undue influence upon plaintiff. It appears that the discussion as to the deed

was in the husband's presence and participated in by him.   It must be held that a finding to that effect is not supported by clear, convincing, and satisfactory evidence but is against the great weight of the evidence.   The weakness in plaintiff's case might be somewhat lessened if there were sufficient testimony to warrant the contention now made that defendant exercised undue influence on the plaintiff through her husband. Such a contention is predicated upon misrepresentation of law which the husband says defendant made to him with regard to the descent of the property.   He says she represented to him that if his wife died with the property in her name alone some of her relatives would be able to make him sell it at the cheapest price.   That representation, he says, frightened him into having his wife transfer the property into a joint tenancy. However, it is clear that Martin Dobbin was the one who consulted a lawyer about the drafting of the deed; that he then acted alone; that he had ample opportunity to inquire concerning his rights.   It is also very clear that he did not talk with the lawyer about anything of that sort.   Although he said he feared that, "any paper my wife would sign would not stand in court," he sought no advice and did not consult the lawyer on that subject.   It cannot be said that Mr. Dobbin refrained from asking the advice of the lawyer because he relied on defendant, for he was extremely suspicious of her.   At this time he was taking the initiative in the transaction.

Is there proof of a disposition to influence plaintiff or her husband unduly for the purpose of procuring an improper favor?   In plaintiff's brief several statements are made to the effect that the record discloses the defendant to be "a very intelligent, surreptitious, and conniving woman" and "a woman who is mentally alert, sharp, avaricious, dominating."   No references are made to testimony.   Such definite conclusions cannot be drawn from the record in general.   In the record we find testimony that the defendant did perform kindly acts which might ingratiate her with the plaintiff; that she did not trust

Martin Dobbin to handle her aunt's affairs; and according to Martin Dobbin's testimony seemed very anxious about the property. If all the other elements essential in cases where undue influence is charged were present, those facts might be considered as of importance as showing a disposition to exer-cise influence unduly, but standing alone they cannot be considered as such. The most that can be said is that she was interested in keeping the property in her family line. Another factor to be remembered in considering the evidence as relating to defendant's disposition is that she continued to visit the plaintiff at the hospital, even more frequently than her husband, until the efforts to secure a reconveyance began.

Does the result clearly appear to be the effect of the supposed influence? It is true defendant paid no consideration for the interest in the property which she received. However, defendant is the niece of the plaintiff. There evidently had been an understanding on her part, at least, that the property eventually was to come back to her family. The property had been in that family for eighty years.

There is in this case the claim that the conveyance was procured through fraud and misrepresentation on which plaintiff relied. Two things are pointed to. The first is the statement alleged to have been made to Martin Dobbin in regard to the property in case of plaintiff's death. We have already discussed this suggestion and find no merit in it. The second is a statement made in a letter from defendant to plaintiff written in June, 1947, in which it is said that if she conveyed her interest to the plaintiff, Martin Dobbin would get it. That statement was made about nine months after the transfer and it is considered as having no effect on the conveyance under consideration here. It indicates the letter was written because of the belief on defendant's part that under the arrangement made Martin Dobbin has all he is entitled to.

It is considered that the transfer of an interest to Viva E. Costello cannot be set aside; that no undue influence, fraud,

or misrepresentation was used to procure the deed. Defendant's refusal to convey her interest in the property upon the request of the plaintiff in view of her claim of need might seem unkind, but this feeling cannot be transmuted into a legal ground for setting aside a transaction completed months before. In *Johnson v. Andreassen, supra,* p. 421, a case in some particulars resembling the circumstances in the case at bar, we held, Mr. Justice WICKHEM speaking for the court, that: "Plaintiff had the burden of proving some circumstance, such as fraud, mistake, undue influence, or mental incompetency, legally effective to upset this transaction which was fully executed so far as its formal aspects are concerned. It is our conclusion that she wholly failed to meet this burden. The evidence is rather to the effect that she regretted having made the gift because of later fears that she would need the principal at some time during her lifetime. This is not the sort of situation in which the law grants relief in the case of a fully completed gift."

*By the Court.*—Judgment reversed. Cause remanded with directions to enter judgment dismissing plaintiff's complaint.