## Yost Estate

*Edward M. David*, for accountant.
*Charles Wright*, for Commonwealth.

SHOYER, J., December 21, 1953.—This trust arose under deed dated June 16, 1927, as amended September 11, 1947, whereby Harry N. Yost, settlor, created a trust by which he gave to the trustee certain funds (with later additions) in trust to pay him the income for life "and in addition thereto so much of the principal as I may in writing from time to time request". He provided that on his death the income should be paid to his wife, Mary S. Yost, for life, with a power to request principal in writing, and after her death to divide the corpus into two parts and to pay one to his sister, Annie Kinzer, or if not then living, to her issue per stirpes, and to pay the other part to Emma Siegrist, sister of his wife, Mary S. Yost, or if not then living, to her next of kin in accordance with the

intestate laws of the State of Pennsylvania, as of the date of her death.

There is no express power of revocation or amendment, and no spendthrift trust clause.

The amendment recites the death of his wife and provides that on his death the corpus should go to his sister, Annie Kinzer, or if she be not then living, to her issue per stirpes.

This account is filed because of the death of the settlor on June 3, 1953 . Letters testamentary on his estate were granted to the Pennsylvania Company for Banking and Trusts by the Register of Wills of Philadelphia County. The trust terminated by his death.

By writing, annexed to the account, the Pennsylvania Company for Banking and Trusts, executor of the estate of Harry N. Yost, deceased, waives the filing of a complete income account, all income prior to that in the account having been previously accounted for and paid over to Harry N. Yost, settlor.

Annie Kinzer and Emma Siegrist are both living and of full age, and both received notice of this audit. The latter was notified:

"The original Deed of Trust dated June 16, 1927, directed that upon the death of Harry N. Yost and Mary S. Yost the principal of this trust should be paid one half to Annie Kinzer and one half to you. By writing dated September 11, 1947, Mr.. Yost amended the trust and provided that the entire principal should on his death be paid to Mrs. Kinzer. Although the deed of trust did not provide that it could be amended or revoked, Mr. Yost reserved a power to withdraw so much of the principal as he should in writing request. In our opinion this power to withdraw principal included a power to amend the deed of trust and we will, therefore, request that the court distribute the whole principal of this trust to Mrs. Kinzer."

It seems clear that settlor during his lifetime could have withdrawn all of the principal of the trust and could have executed a new deed of trust in accordance with the amended provisions. He should be permitted to do directly that which he could have done indirectly.

It has been held that a right to decrease a trust fund or to withdraw the whole amount comprises a right to revoke a trust in whole or in part: Trenton Banking Co. v. Howard, 121 N. J. Eq. 85, 187 Atl. 569, 571; Boyle et al. v. Kempkin et al., 243 Wis. 86, 9 N. W. 2d 589, 592 (1943).

Ordinarily, the general power to revoke a trust will be interpreted as authorizing settlor to modify the terms of the trust: A. L. I. Restatement of the Law of Trusts, §331(g) ; Scott on Trusts, §331.1. There are apparently no Pennsylvania cases squarely on this point; see Note, 99 U. of Pa. Law Rev. 1170 (1951).

In Shapley Trust, 353 Pa. 499 (1946), the question was whether an inter vivos deed of trust was testamentary. The court held that the trust was neither testamentary nor did the will operate as a revocation within the terms providing for revocation of the deed. However, in discussing this case, the court made the following pertinent statement (page 502) :

"We are not prepared to recognize a distinction between settlor's right to withdraw principal from the trust and his right to revoke the trust in whole or in part. Both cause an amendment or partial revocation, and with the same legal effect."

In Pengelly Estate, 374 Pa. 358, 364 (1953), the above statement was approved and the court expressly held that an unlimited power to consume amounted to the power to revoke.

I therefore find that the amendment was effective, and the corpus is now payable to Annie Kinzer. . . .

And now, December 21, 1953, the account is confirmed nisi.