# IN RE ESTATE OF MARGARITA ZIRI SAVAIN. Ecedro Rabsatt, Appellant, v. Ruth Robson, Appellee.

D.C. Civ. App. No. 1998-191

District Court for the Virgin Islands,

Division of St. Thomas And St. John

September 7, 2000

KWAME MOTILEWA, ESQ., Savannah, GA, *for Appellant*

DEAN L. BARNES, ESQ., Law Offices of Andrew L. Capdeville, P.C., St. Thomas, U.S. Virgin Islands, *for Appellee*

FINCH, *Chief Judge*, BROTHMAN, ROSS, *Sitting by Designation*

## OPINION OF THE COURT

Appellant Ecedro Rabsatt (hereinafter "Rabsatt" or "Appellant") appeals the Territorial Court's August 28th 1998 decision to uphold the validity of the Margarita Savain Trust, a trust created during the lifetime of decedent Margarita Ziri Savain. Rabsatt advances two arguments in support of his assertion that the Territorial Court's decision should be reversed. Initially Rabsatt argues the court erred because the terms of the trust render it invalid. Alternatively the Appellant contends that the trust was revoked by

the devise of the estate in Savain's third will. For the reasons stated herein, the trial court's decision to enforce the trust is affirmed.

## FACTS AND PROCEDURAL HISTORY

On February 24, 1981, Margarita Savain created, via written instrument, the "Margarita Savain Trust." (See Margarita Savain Trust ("Trust Agreement") attached to Appellant's Appendix at p. 1) The trust included as its corpus, by reference to an attached schedule, property located at Parcel No. 41 Estate Caret Bay, St. Thomas. (See Trust Agreement at Schedule A) The instrument provided that Savain would retain a life interest in the estate, and upon her death the trust estate would be distributed to her brother, Marcelo Ziri ("Ziri"); but if he predeceased her, then it would be distributed to her friend Ruth Robson ("Robson"). (*See* Trust Agreement at P 3(B))

The trust, which appointed Savain as the initial trustee, expressly provided that the trustee was required to administer the trust estate in accordance with the settlor's wishes. (*See* Trust Agreement at PP 2, 3-4) The instrument further granted Savain, as settlor, the power to appoint a successor trustee, to revoke or modify the trust, change beneficiaries, and to withdraw any part of the trust. (*See* Trust Agreement at PP 9 & 13) The trust was recorded on April 29, 1981 at the Recorder of Deeds Office for St. Thomas and St. John. (*See* Trust Agreement at p. 5)

Approximately two years later in October of 1983, apparently after discovering that the trust precluded her from obtaining a mortgage,[1] Savain had an amendment to the trust prepared specifically granting the trustee the power to mortgage the property. (*See* Appellant's App. At 6) This document is entitled First Amendment to the Margarita Savain Trust ("Amendment"). Several years later in April of 1992, Savain executed a power of attorney, authorizing appellant Ecedro Rabsatt ("Rabsatt") to "represent me in any and all matters pertaining to my business affairs." (*See* Power of Attorney, appellant's app. at A-13) The document further empowered Rabsatt to sign "any and all Leases or Rental Agreements pertaining to the rental of my property, and to pay all my bills which have to be paid on my behalf." (*See id.*)

---

[1] Although the parties did not submit evidence as to the reason for Savain's amendment, the Territorial Court found that the initial failure to obtain the mortgage prompted Savain to record the amendment. *See In re Estate of Savain*, No. 86/92, 117/92, 1998 WL 567882 at * 1 (D.V.I. Aug. 28, 1998).

Less than one month after authorizing the power of attorney, on May 12th 1992 Savain executed her third will ("Will Number 3"). The will, which stated that it revoked "any and all Wills, Testaments, or Codicils made by me at any time heretofore," provided that Savain's sole beneficiary was her long-time friend Rabsatt. (*See* Appellant's App. at A-15) In addition, the will specifically devised the property at issue to the Appellant. (*See id.*) Absent from the will, however, was any express language asserting that Savain was revoking the Margaret Savain Trust. (*See id.*)

Savain died on May 24th 1992. She was predeceased by Ziri and therefore Robson stands to take legal title to the land under the trust. Rival petitions for the admission of the wills to probate were filed in the Territorial Court by Robson, Rabsatt, and Paul Schack, a beneficiary listed in Savain's second will. The trial court found that the second and third wills were invalid and the decision was affirmed by the appellate division in 1995. The Third Circuit affirmed the appellate division's findings as to the second will, but reversed as to the third and remanded for further proceedings. On remand the trial court held, after conducting a hearing on December 11th and 15th 1997, that Will Number 3 was valid and that the Margarita Savain Trust was valid and not revoked. *See In re Estate of Savain,* No. 86/92, 117/92, 1998 WL 567882 (D.V.I. August 28th 1998). Rabsatt, the beneficiary named in Will Number 3, appeals the Territorial Court's August 28th 1998 decision, arguing that the trust is invalid and therefore the disposition in Will Number 3 controls.

## DISCUSSION

### A. Jurisdiction & Standard of Review

This Court has jurisdiction pursuant to Title 4 V.I.C. § 33 for appeals from a judgment of the Territorial Court of the Virgin Islands. "Findings of fact shall not be set aside unless clearly erroneous and due regard shall be given to the opportunity of the territorial court to judge the credibility of the witnesses." V.I. Code Ann. tit. 4, § 33 (1997). Review of the Territorial Court's application of legal precepts is plenary. See *Thomas v. Abamar-BB,* 35 V.I. 117, 934 F. Supp. 164, 166 (D.V.I. App. Div. 1996).

Under Title 1 of the Virgin Island Code,

> The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands ... in the absence of laws to the contrary.

V.I. Code Ann. tit. 1, § 4 (1995). Because neither the parties' submissions nor research has revealed any local laws on point, the Court will focus upon the applicability of the restatements to the instant matter.

Appellant advances two arguments in support of his assertion that the Territorial Court erred. First Rabsatt argues that the terms of the trust render it invalid. Alternatively the Appellant contends that the trust was revoked by the devise of the estate in Will Number 3. Each argument will be addressed individually.

## B. Validity of Trust

The Appellant offers several arguments in support of his assertion that the trust is invalid. Rabsatt contends that the trust is invalid because: 1) it fails for lack of certainty; 2) it does not impose a duty upon the trustee; 3) the settlor had absolute and unconditional control of the res; 4) the trustee could not hold trust property; and 5) the amendment to the trust was invalid.

### 1. Lack of Certainty

Appellant claims the trust fails for a lack of certainty because it does not state "how the trust is to be performed." (*See* Appellant's Br. at 14) However an examination of the trust's contents reveals that it satisfies the restatements by clearly identifying the parties and interests at issue.

Section two of the second restatement provides that a trust "is a fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it." *Restatement (Second) of Trusts* § 2 (1959). Comment h of § 2 outlines the three elements necessary to create a valid trust: 1) a trustee; 2) a beneficiary; and 3) trust property. *See id.* at cmt. h.

Here the trust at issue satisfies these elements with the requisite specificity. It names a trustee (Savain), identifies the beneficiaries

(Savain was listed as a beneficiary, retaining a life estate; Ziri retained a vested remainder interest and Robson had a contingent remainder interest), and the trust property (the Caret Bay estate on St. Thomas). The instrument further provides that "the trustee shall retain as an investment, unless and until the Grantor by a writing delivered to the Trustee shall otherwise direct, all of the property originally assigned, transferred, or delivered to the trustee[.]" (Trust Agreement at P 4(a)) Thus the trust clearly establishes "how it is to be performed." As trustee Savain was required, unless otherwise directed, to hold the St. Thomas estate in trust for the benefit of herself as life tenant, and thereafter the trustee was instructed to distribute the corpus pursuant to the Trust Agreement to the appropriate remaindermen (either Ziri or Robson). In addition, the preparation of the trust instrument and recording of the Trust Agreement in the St. Thomas office of deeds further evidences Savain's intention to create a trust relationship.

■ While Rabsatt claims language in the instrument providing that the trustee shall "hold, manage and administer the trust estate in accordance with the wishes of the Grantor" renders the terms of the trust ambiguous, this is unsupported by the restatements. Section 37 of the second restatement provides that "[a] trust may be created although the settlor ... reserves powers with respect to the administration of the trust." *Restatement (Second) of Trusts* at § 37(1959). Comment a to § 37 further provides that the settlor "may reserve the power to control the trustee in making investments or in disposing of investments[.]" *Id.* at § 37 cmt. a. The language cited by the appellant, which serves to reserve the settlor's power to control the administration of the trust corpus, appears consistent with section 37 and therefore does not render the trust uncertain.[2] Because the instrument specifically identifies the beneficiaries, the corpus, and the trustee, Appellant's argument that it is too ambiguous to be enforced fails.

---

[2] As discussed below, it may operate to render the trust "passive." *See infra*, section B(2); *see also* GEORGE C. BOGERT & GEORGE T. BOGERT, THE LAW OF TRUSTS AND TRUSTEES § 206 (2d. Ed. 1984) (explaining that "trusts which are passive because of the lack of sufficient duties placed upon the trustee are to be distinguished from trusts which fail because of the uncertainty as to the nature of the duties which the trustee is to perform").

## 2. Trust Imposes No Duties Upon Trustee

Rabsatt also contends that the trust is invalid because it fails to impose duties upon the trustee. The appellant argues that by requiring the trustee to obtain the settlor's permission in order to alter any of the investments in the trust corpus, the trust failed to impose any duties upon the trustee and thus should be rendered invalid.

Although the Appellant neither expressly states it in his brief nor cites to the applicable restatement, his argument appears to be in essence that Savain created a passive trust. Comment a to section 69 of the restatement second provides that "[a] trust is not active unless the trustee has by the terms of the trust affirmative duties to perform. If his sole duties are negative, that is not to interfere with the beneficiary in his enjoyment of the property, the trust is passive." *Restatement (Second)* § 69 cmt. a (1959). According to the second restatement, passive trusts are executed by the Statute of Uses and render legal title to the equitable owner for that portion of the trust that is passive in nature. *See id.* at §§ 67 -69.

Here the trustee arguably had no active duties to perform with respect to Savain's life interest in the land. The trustee was charged with administering the estate "in accordance with the wishes of the Grantor" and was in essence not permitted to make any decisions with respect to the estate without the settlor's consent. (Trust Agreement at PP 3, 4) Further the initial agreement provided that the grantor, not the trustee, reserved the right to collect rents. (*See* Trust Agreement at P 3(a)) Thus a case could be made that the settlor's broad retention of power rendered the trustee powerless as to Savain's life estate and therefore the Statute of Uses should be applied and the trust executed as to Savain's life interest.

However, assuming arguendo that this were the case, it does not follow that the remaindermen's interest would be rendered invalid. Comment c to section 69 of the second restatement provides that "active duties imposed upon the trustee may not begin until after the expiration of a limited period. In that case the Statute of Uses may execute the trust for the limited period." *Restatement (Second)* § 69 cmt. c (1959) (emphasis added). In such instances the trust is not rendered invalid, rather in cases "where a trust for an income beneficiary is passive, title to the temporary interest may be held to pass to the [life] beneficiary, [but] the trust as to the remainder interest is active and continues in force." George C. Bogert & George T. Bogert, *The Law of Trusts and Trustees* § 206 (2d. Ed.

1984) (emphasis added). An illustration contained within section 69 of the second restatement appears analogous to the instant case:

> A, the owner of Blackacre, by a conveyance not operating under the Statute of Uses, transfers Blackacre to B and his heirs to the use of C for life and after C's death in trust to sell Blackacre and divide the proceeds among C's children. The trust for C being passive, it is executed by the Statute; *the trust for C's children being active, it is not executed by the Statute.* C has a legal estate for life; *B has a legal remainder he holds in trust for C's children.*

*Restatement (Second)* § 69 cmt. c illus. 4 (1959) (emphasis added)

Here the limitation on the trustee's power was confined to the settlor's lifetime interest. Upon the settlor's death the trustee, like the trustee in the above illustration, was required to distribute the trust estate to the applicable remainderman in accordance with the provisions of the instrument. (*See* Trust Agreement at PP 3,6) Thus the arguably passive nature of the trust during the existence of Savain's life estate has no practical effect upon Robson's "active" remainderman interest.[3] See *Restatement (Second)* § 69 cmt. c illus. 4 (1959); *see also Boyle v. Kempkin,* 243 Wis. 86, 9 N.W.2d 589, 591-92 (Wis. 1943).

■ As discussed above, a restriction upon the trustee's ability to make investments does not render the trust invalid. Comment a to section 37 instructs that:

> There is no specific limit to the nature or extent of the powers which the settlor may reserve. He may reserve a power to revoke the trust, or a power to alter or amend the trust, either in addition to the power to revoke or in exclusion of such a power. *He may reserve the power to control the trustee in making investments or in disposing of investments, or to veto a particular investment.* He may reserve the power to change the beneficiaries of the trust, or to

---

[3] Moreover Savain's subsequent amendment of the trust, which granted the trustee the power to borrow funds against the property "to use as the Trustee shall see fit in the premises and further," appears to have subsequently rendered the trust "active" with respect to Savain's interest. The appellant, however, argues that the Amendment is invalid because the language "as the trustee shall see fit" grants the trustee unbridled discretion. However, as discussed below, this language does not render the amendment invalid. (*See infra,* section B(5)).

change the respective shares, or interests, or the nature of the interests, which they are to take. This is not an exhaustive enumeration of the powers which may be reserved, however. *There is no specific limitation on the number or the nature of such powers, and they may be included in the terms of the trust in such number and of such nature as the settlor desires.*

*Restatement (Second) of Trusts* § 37 cmt. a (1959) (emphasis added) Although Savain retained extensive control over the trust as settlor, the wording of the restatements supports the exercise of such a broad range of powers.

A similar conclusion was reached in *In re Estate of Brenner,* 37 Colo. App. 271, 547 P.2d 938, 941-42 (Colo. Ct. App. 1976), where the settlor appointed himself trustee, reserved the right to income for life, the right to revoke, alter, or amend the trust, and the sole power to invest, reinvest, manage, and control the trust property. The *Brenner* court rejected the contention that there was a merger between the legal and equitable title to the trust property that invalidated the trust, reasoning that the "argument overlooks the fact that the interest of the residual beneficiaries vests [at the time the trust is created]." 547 P.2d at 942. *Brenner* is consistent with the more recent trend in the law to uphold trusts where the settlor exerts extensive control over the trust. *See* Austin W. Scott & William F. Frachter, *The Law of Trusts* § 57.2 (4th ed. 1987) (acknowledging "the trend of the modern authorities is to uphold an inter vivos trust no matter how extensive may be the powers over the administration reserved by the settlor"); *see also Limb v. Aldridge,* 1999 OK CIV APP 31, 978 P.2d 365, 368 (Okla. Ct. App. 1998) (explaining that "although the case law is scant, the prevailing view thus appears to be that the merger doctrine will not apply so long as the settlor has designated some beneficiary, even a contingent beneficiary, other than himself")

■ Rabsatt also claims the trust constitutes an unenforceable testamentary trust because it "gave the beneficiary nothing more than the right to received [sic] the property if the settlor died with the trust still in effect[.]" (*See* Appellant's Br. at 17) However section 57 of the second restatement, entitled "Disposition Inter Vivos Where Settlor Reserves Power to Revoke, Modify or Control" expressly provides that:

Where an interest in the trust property is created in a beneficiary other than the settlor, *the disposition is not testamentary and invalid*

for failure to comply with the requirements of the Statute of Wills *merely because the settlor reserves a beneficial life interest or because he reserves in addition a power to revoke the trust in whole or in part*, and a power to modify the trust, and a power to control the trustee as to the administration of the trust.

*Restatement (Second) of Trusts* § 57 (1959) (emphasis added) (internal citation omitted); *see also id.* at § 56 & cmt. f. Because the restatements classify trusts in which the settlor retains a life interest or a right to revoke as "inter vivos," the Appellant's argument that Savain's broad retention of powers mandates a finding that the trust is testamentary in nature is rejected.[4] This result is consistent with a leading authority in the field, who observed that "in the great majority of the decisions [addressing instances where the settlor has retained extensive trust powers] it has been held that such a trust instrument is not in reality an attempted will, but is rather a valid inter vivos trust." George C. Bogert & George T. Bogert, *The Law of Trusts and Trustees* § 104 (2d. Ed. 1984).

## 3. Settlor's Absolute Control of the Res

Similar to his prior arguments, appellant contends that the extensive control the settlor exercised over the trust rendered it invalid. Emphasizing the fact that Savain appointed herself trustee, and arguing that the instrument failed to provide the trustee with clear and specific duties, Rabsatt asserts the trust must fail.

██ Comment f to section 331 of the second restatement provides that a settlor may declare him/herself trustee. *See Restatements (Second) of Trusts* § 331 cmt. f (1959). Thus Savain's designation as trustee does not

---

[4] In support of his argument Appellant cites to *Poltz v. Tyree*, a case in which Washington's appellate division classified a similar trust as "primarily testamentary in effect[.]" 41 Wn. App. 695, 705 P.2d 1229, 1230-31 (Wash. Ct. App. 1985). However, it is important to note that the *Poltz* court upheld the trust's validity and merely held that such a trust could be orally revoked where there was no requirement that the trust's revocation be in writing. 41 Wn. App. 695, 705 P.2d 1229, 1230-31 (Wash. Ct. App. 1985). Here the Trust Agreement expressly provides that the trust should be revoked "by·filing notice of such revocation ... with the trustee." (*See* Trust Agreement at P 13) Thus *Poltz* is distinguishable from the facts of this case and is inconsistent with the restatements to the extent it stands for the proposition that trusts are testamentary in nature whenever the settlor retains a life estate coupled with a power to revoke.

invalidate the trust. Nor does the retention of extensive rights by Savain render the trust unenforceable. As discussed *supra*, sections 37 and 57 of the restatements allow settlors to retain a broad range of powers. Given that the restatements permit a settlor to serve as trustee and also allow settlors to retain broad powers over the trust's administration, it would be inconsistent to hold that an agreement combining the two somehow renders the trust invalid. By the settlor's designation as trustee it is obvious that the settlor intends to retain extensive rights to control the trust; any powers of administration expressly reserved by the settlor in the instrument arguably have been implicitly acknowledged by virtue of the designation as trustee. Thus for all practical purposes the combining of the two (i.e. appointing settlor as trustee and reserving extensive powers of control as settlor) adds nothing to the equation that was not implicitly included by virtue of the settlor's designation as trustee. As a result Savain's reservation of extensive powers over the inter vivos trust, coupled with her appointment as trustee, does not effect the trust's validity.[5] *See Brenner,* 547 P.2d at 941-42; *see also* Scott, *supra* at § 57.2.

## 4. The Trustee's Ability to Hold Trust Property

This section of Appellant's brief essentially recasts the arguments previously asserted. Because the Court has addressed these issues, Rabsatt's argument as to this section of his brief is rejected for the reasons discussed *supra*.

## 5. Amendment to the Trust was Invalid

Citing to language in the amendment to the trust, the appellant argues that the "proposed amendment is invalid because the settlor did not manifest any intention to impose any enforceable obligation on herself as trustee, and the trustee is given absolute, unconditional discretion with respect to the funds which was [sic] to be borrowed under the trust." (*See* Appellant's Br. at 25) The language in question states that "the Grantor gives to the Trustee the power to mortgage, pledge or encumber real

---

[5] Additionally the Court notes that the creation of the remainder interests imposed upon the trustee a duty "to the successive beneficiaries to act with due regard to their respective interests." RESTATEMENT (THIRD) § 232 (1990). Therefore Appellant's assertion that the Trust Agreement failed to impose any duties upon the trustee is inaccurate.

property that composes all or a portion of the corpus of this trust for the purpose of borrowing funds to use *as the Trustee shall see fit* in the premises [.]" (*See* First Amendment to The Margarita Savain Trust, ("Amendment") at Appellant's A-6).

While Rabsatt argues that the "as the Trustee shall see fit" language is precatory in nature and renders the amendment invalid, comment b to § 37 of the restatement second expressly provides that "the settlor may grant powers to ... the trustee ... as the settlor thinks desirable. It may be provided that such powers shall be exercised by ... *the trustee ... as he sees fit.*" *Restatement (Second) of Trusts* § 37 cmt. b. (emphasis added). Thus the Court finds the argument that the language in the amendment renders the instrument invalid unavailing, especially in the instant case where the exercise of the power was clearly limited to the premises. (*See* Amendment) (stating that power could be exercised "as the Trustee shall see fit *in the premises*") (emphasis added)

Moreover even if the amendment were invalid, it does not follow that the trust itself is invalid.[6] Rabsatt cites no caselaw in support of such a proposition, and research reveals that in instances where an amendment to the trust is invalid, courts have enforced the trust's terms absent the unenforceable amendment. *See In re Estate of Irvine,* 40 Cal. App. 4th 1334, 47 Cal. Rptr. 2d 587, 594-95 (Ct. App. 1995) (holding amendment to trust invalid but nonetheless enforcing trust); *Knowles v. Binford,* 268 Md. 2, 298 A.2d 862 (Md. 1973).

## C. Subsequent Revocation of the Trust

Appellant alternatively contends that the trust is unenforceable because it was revoked by Will Number 3. Paragraph 13 of the Trust Agreement provides, in pertinent part, that the "Grantor reserves the right ... without the consent of any person and without notice to any person *other than the Trustee,* to revoke or modify the trust ... *by filing notice of such revocation ... with the Trustee*[.]" (Trust Agreement at P 13) (emphasis added).

Rabsatt argues that the disposition in Will Number 3 of the trust corpus operates as a revocation of the trust. However comment j to section 330 (1) of the restatement second instructs that:

---

[6] It may, however, impact the classification of the trust as "passive" with respect to Savain's interest. *See supra,* Section (B)(2).

If the settlor reserves a power to revoke the trust only in a particular manner or under particular circumstances, he can revoke the trust only in that manner or under those circumstances.

...

If the settlor reserves a power to revoke the trust by a transaction inter vivos, *as for example, by a notice to the trustee, he cannot revoke the trust by his will.*

*Restatement (Second) of Trusts* § 330(1) cmt. j (1959) (emphasis added).

Here the instrument specifically provided that the trust could be revoked only by filing of notice with the trustee. While Rabsatt argues that the appointment of the settlor as trustee warrants a different result, this argument overlooks the fact that execution of a will is not an inter vivos act but rather is testamentary in nature, and therefore any notice given in the will would be of no legal effect. *See* John P. Ludington, *Exercise by Will of Trustor's Reserved Power to Revoke or Modify Inter Vivos Trust,* 81 A.L.R. 3d 959, § 2 (1977 & Supp. 2000) (observing that "attempts by a trust settlor to modify or revoke the inter vivos trust by will have failed in 10 of 11 reported cases" and concluding that "courts have held ineffective an attempted testamentary exercise of a reserved power to modify or revoke an inter vivos trust by deed or by written instrument delivered to the trustee"); *see also Barnette v. McNulty,* 21 Ariz. App. 127, 516 P.2d 583, 586 (Ariz. Ct. App. 1974) (reasoning that because the settlor also served as trustee "it would be absurd to require the settlor to call himself" and formally revoke the trust, *but nonetheless concluding* that "since the will he executed did not take effect during his lifetime, we cannot consider the provisions of the will as a revocation of the trust").

▮▮ Moreover, an examination of Will Number 3 reveals that there is no express language purporting to revoke the trust that was created. Rather the will merely attempts to devise the property designated as the trust corpus. "A settlor's general testamentary disposition of his property is ineffective to exercise a general or unrestricted power to revoke or modify an inter vivos trust." *Ludington, supra,* at § 2(a); *see also Euart v. Yoakley,* 456 So. 2d 1327 (Fla. Dist. Ct. App. 1984) (reasoning that the devise of trust property in a will which neither expressly or inferentially referred to the trust at issue did not constitute a revocation of the trust because it did not overcome the normal testamentary character of a will provision). Because Will Number 3 never expressly references the trust and instead merely

attempts to make a general testamentary disposition,[7] it fails to warrant any consideration as a valid vehicle for revocation of the trust.

The Appellant alternatively contends that Savain appointed herself sole beneficiary and that as a result, the trust was revoked. However this argument is based on an inaccurate premise; namely, that Savain was the sole beneficiary. As stated previously, both Ziri and Robson had vested interests at the time of the trust's creation. Therefore Savain was never the sole beneficiary. Accordingly Rabsatt's argument on this point is also rejected.

## CONCLUSION

For the reasons discussed above, the Territorial Court's Order is affirmed.

## ORDER OF THE COURT

AND NOW, this 7th day of September, 2000, having considered the arguments and submissions of the parties; and for the reasons set forth in the Court's accompanying Opinion of even date;

IT IS ORDERED AND ADJUDGED that the August 29, 1988 Order of the Territorial Court is AFFIRMED.

---

[7] The appellant also claims that the trust was revoked by the exercise of the power of attorney, which granted authority to, among other things, "sign any and all ... leases or rental agreements pertaining to the rental of my property[.]" (Power of Attorney, Appellant's App. at A-6) (emphasis added) However the power of attorney makes no mention of the trust, or any intention to revoke it. Therefore the language contained in the power of attorney is not sufficient to constitute a revocation. Moreover, as the Territorial Court noted, the control granted in the power of attorney (i.e. to sign leases and collect rent) was consistent with Savain's retention of a life estate. While Rabsatt relies upon Savain's reference to "my property" as evincing an intent to revoke the trust, this argument appears to place too much emphasis on form, especially here where the trial court found, based upon the testimony of Rabsatt (the 'attorney in fact' granted the power of attorney), that the document was prepared for the sole purpose of enrolling Savain in the government's "Meals on Wheels" program. *See In re Estate of Savain,* No. 86/92, 117/92, 1998 WL 567882 at * 8.