BECKER, Appellant, vs. FIRST WISCONSIN TRUST COMPANY and others, Respondents.

*December 5, 1956—January 7, 1957.*

For the appellant there was a brief by *Stern & Stern* and *Alan I. Stern,* all of Milwaukee, and oral argument by *James F. Stern.*

For the respondent First Wisconsin Trust Company there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Edmund W. Powell* and *Reuben W. Peterson, Jr.,* of counsel, all of Milwaukee, and oral argument by *Mr. Peterson.*

For the respondents Maude S. Courtney, Mary Lou Amatucci, Lynn Shepherd Courtney, and Ann Courtney Sigwald there was a brief by *Michael, Spohn, Best & Friedrich,* attorneys, and *Roy C. LaBudde* of counsel, and oral argument by *Thomas S. Stone,* all of Milwaukee.

BROADFOOT, J. Prior to the execution of the trust agreement the plaintiff was the sole beneficiary of a testamentary trust under the will of his father. The First Wisconsin Trust Company was trustee of said trust. Under the provisions of the testamentary trust the trustee was authorized to pay the corpus thereof to the plaintiff when he attained the age of twenty-five years, but with discretion to withhold such payment until he attained the age of thirty-five years. The trustee declined to pay the corpus of the trust to plaintiff when he was twenty-five years of age and continued to hold the same as trustee. The plaintiff was twenty-seven years of age at the time the trust agreement, which is the basis of this action, was executed.

As a result of family difficulties, plaintiff's wife left his home and took the children with her. In an attempt at reconciliation conferences were held between plaintiff and his wife with an officer of the Trust Company. The trust agreement was drawn and executed as a result of those conferences. During the conferences it was agreed that the testamentary trust would be terminated and the plaintiff, as donor in the trust agreement, assigned the property formerly in the testamentary trust to the trustee herein under the terms of the trust agreement. The corpus of the trust was divided into two shares. Share A consisted of 25/40 thereof and Share B consisted of 15/40 thereof. Maude Becker was to receive the net income from Share A. The children, who are named as individual defendants, were to receive the income from Share B. In case of the death of Maude Becker before final distribution of the trust, Share A was to be added to Share B.

When and as any of the children attained the age of thirty years her share of the principal of Share B was to be distributed to her. In the event of the death of said Maude Becker and the deaths intestate and without surviving issue of the beneficiaries of Share B, any remainder would go to the plaintiff, his executors, administrators, or assigns under the terms of the agreement.

The trust was administered according to its terms and this action was started on October 30, 1953. Mary Lou Amatucci was thirty years of age on October 31, 1953. A temporary restraining order was issued that prevented the Trust Company from making any payments or disbursements from the assets and property held by it pending the outcome of the trial.

The plaintiff's first contention is that the trust agreement, properly interpreted, reserved to the donor a power of revocation during his lifetime. Paragraph 4 of the trust agreement reads as follows:

"The assets and securities now and/or from time to time hereafter comprised in said trust fund may be held by the trustee in its discretion, whether or not the same conform to the rules herein or by law prescribed for investments; and shall be so held for and so long as the donor shall survive and shall so direct."

The plaintiff relies in particular upon the last clause of said paragraph. The trial court held that said clause gave the plaintiff a limited power of direction to the plaintiff as to the investment of the assets originally comprising the trust. The plaintiff directs our attention to paragraphs 6 (a) and 8 of the trust agreement, which read as follows:

"6 (a) In making investments the trustee shall be governed from time to time, as it shall in its discretion determine, by the rules from time to time prescribed by any one or more of the following statutes of Wisconsin, and the amendments from time to time made thereto, to wit:

"Section 201.25, regulating investments of insurance companies.

"Section 206.34, regulating investments of life insurance companies.

"Section 231.32, regulating investments by trustees."

"8. The trustee shall have full power of sale, assignment, transfer, and conveyance of and over any and all the assets from time to time subsisting in the trust estate. It may in its discretion in respect of any corporate securities subsisting in said trust pay and discharge any liens, debts, or obligations existing on any such assets, approve and participate in and make any dissolution or other transactions; accept substituted, or distributed stocks and securities; and may exercise any rights to subscribe for and purchase additional stock or other securities; all with impeachment only for lack of good faith."

It is the contention of the plaintiff that under paragraph 4 of the trust agreement the trustee was authorized to hold assets originally in the trust whether or not they were legal investments for trustees; that under paragraph 6 the trustee could, in its discretion, invest in securities denominated as legal investments and as defined by one or more of the statutes therein mentioned; and that under paragraph 8, the trustee was given an absolute and unlimited power of sale. The plaintiff then contends that the only rational and sensible meaning which can be attached to the last clause of paragraph 4 is that the donor reserved the power to revoke the trust instrument during his lifetime; otherwise that clause is meaningless.. The plaintiff concedes that as a general rule a trust validly and voluntarily created is irrevocable in the absence of power of revocation reserved in the trust instrument. Nevertheless, he contends that the power of revocation need not be express but may be implied from the terms of the entire agreement, when properly interpreted.

In *Boyle v. Kempkin,* 243 Wis. 86, 92, 9 N. W. (2d) 589, this court said, "A power to revoke may be implied from the

language of the trust instrument." The plaintiff also cites
the case of *Lambdin v. Dantzebecker,* 169 Md. 240, 243, 181
Atl. 353, 102 A. L. R. 277, in which a clause "and this is her
authority to do so, until otherwise directed" was held to be
a reservation by the donor to revoke or modify the trust
agreement. Plaintiff contends that the last clause of para-
graph 4 is far more clear and certain in its statement of the
purpose to reserve the power of revocation than were the
words construed by the Maryland court. However, a read-
ing of the *Lambdin Case* shows that the facts are entirely dis-
similar. The trust agreement in the *Lambdin Case* was held
to be ambiguous and parol evidence of all the facts and cir-
cumstances surrounding the execution of the trust agreement
was before the court. Included in that testimony was the
statement of the scrivener as to what was intended. Under
the circumstances, the *Lambdin Case* is not persuasive when
applied to the facts revealed by the record in this case. A
careful reading of the entire trust agreement convinces us
that the trial court was correct in its interpretation. The last
clause of paragraph 4 gave the plaintiff the right to direct
the Trust Company to hold the original securities comprising
the corpus of the trust. The language is clear and unambigu-
ous and it would require a very strained construction to reach
the result contended for by the plaintiff.

The plaintiff further calls attention to the case of *Trenton
Banking Co. v. Howard* (N. J.), 187 Atl. 569, 187 Atl. 575,
wherein the trust agreement contained the following provi-
sion: "The grantor reserves the right to add to or decrease
said fund from time to time as she may desire." (187 Atl.
570.) That case was referred to in *Boyle v. Kempkin, supra,*
wherein this court used the following language (p. 92) : "It
has been held that where the settlor reserved the right to
increase or decrease the trust fund, this amounted to a reser-
vation of the general power to revoke." Plaintiff then calls at-
tention to the provisions of paragraph 5 of the trust agreement

which permit the donor to add to the fund of the trust and that such further and additional funds shall become and be subject to all the terms and provisions of the trust agreement. There is nothing in the agreement that permits the donor to decrease the fund. A power to withdraw or decrease a fund would, under most circumstances, permit a withdrawal of the entire fund and could be said to amount to a power of revocation. However, a provision that the donor has the right to add to the fund cannot be so construed.

The First Wisconsin Trust Company, in its separate answer to the plaintiff's second cause of action, pleaded as an affirmative defense that the action was barred by the provisions of sec. 330.18 (4), Stats., which limits the time within which to commence an equitable action to ten years. As a separate affirmative defense it also pleaded that the action was barred by laches. The individual defendants in their answer pleaded the same affirmative defenses.

Actions for the reformation of written instruments are equitable actions. *Parker v. Kane,* 4 Wis. *1 ; *Garage Equipment Mfg. Co. v. Danielson,* 156 Wis. 90, 144 N. W. 284; *Milwaukee County v. City of Milwaukee,* 259 Wis. 560, 49 N. W. (2d) 902; *Langer v. Stegerwald Lumber Co.* 262 Wis. 383, 55 N. W. (2d) 389, 56 N. W. (2d) 512.

To support his cause of action for reformation the plaintiff alleged fraud on the part of the corporate defendant and on the part of his former wife. None of the parties referred in any way to sec. 330.19 (7), Stats., which provides that in actions for relief on the ground of fraud the cause of action does not accrue until discovery by the aggrieved party of the facts constituting the fraud. The plaintiff contends, however, that he did not discover the facts constituting the alleged fraud until he commenced the action. This section of the statute has been interpreted by this court on prior occasions. Our latest decision involving said statutory provision is contained in *Hinkson v. Sauthoff,* 272 Wis. 33, 74 N. W. (2d)

620. We have interpreted said statutory provision to mean that the statute commences to run from the time a party obtained knowledge of the fraud or might have obtained such knowledge by the exercise of reasonable diligence.

This action was decided upon motions for summary judgment and the record consists of the pleadings and affidavits. We deem it unnecessary to search the record for facts that would establish the date upon which plaintiff, in the exercise of reasonable diligence, should have made inquiry. Clearly such inquiry would have revealed facts which would have given rise to his now claimed cause of action. However, it is unnecessary to determine the case on this issue, when the plea of laches constitutes a good defense.

It is difficult, if not impossible, to define laches. In 30 C. J. S., Equity, p. 520, sec. 112, it is defined as follows:

"Laches is such delay in enforcing one's rights as works disadvantage to another.

"Laches in a general sense is the neglect, for an unreasonable and unexplained length of time, under circumstances permitting diligence, to do what in law should have been done. More specifically, it is inexcusable delay in asserting a right; an unexcused delay in asserting rights during a period of time in which adverse rights have been acquired under circumstances that make it inequitable to displace such adverse rights for the benefit of those who are bound by the delay; such delay in enforcing one's rights as works disadvantage to another; such neglect to assert a right as, taken in conjunction with lapse of time more or less great, and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity; an implied waiver arising from knowledge of existing conditions and an acquiescence in them; acquiescence in the assertion of adverse rights and undue delay on complainant's part in asserting his own, to the prejudice of the adverse party."

We consider this to be a series of illustrations rather than a concise and complete definition. Laches has been discussed in many Wisconsin cases but again they merely illustrate the

application of the rule rather than to state it exactly. However, a reading of Wisconsin decisions indicates that each case must be determined on its own facts. Time alone is not the essence of laches, but it is an element to be considered. When claims are allowed to become stale it is usually difficult and sometimes impossible for the court to ascertain the truth of the matters in controversy. In this case the delay of twenty-four and one-half years between the execution of the agreement and the commencement of the action warrants an inference against the justice of the claim. This is an equitable action and many equitable maxims are applicable. We will quote but one: "Equity aids the vigilant, not those who slumber on their rights." Sometimes delay can be explained, particularly where the rights of others have not been prejudiced. However, where enforcement of asserted rights would operate to prejudice another's interests, then equity charges the result to the negligent party and precludes him from asserting a right by refusing him the use of the courts to enforce it.

The record discloses the following: The plaintiff was an adult, competent to execute the trust agreement in March, 1929; that a copy of the trust agreement was mailed to him on April 12, 1929, and it is not denied that he had the same in his possession ever since; that shortly before the execution of the agreement plaintiff's wife left his home; that they became reconciled at the time of the execution of the agreement, but on July 31, 1931, the wife secured a judgment of divorce from the plaintiff; that thereafter and before the commencement of this action she remarried; that in the action for divorce she claimed and received no division of property, alimony, or support money for the three children; that the officer of the Trust Company who conferred with plaintiff and his wife, and who presumably drafted the agreement, died before the commencement of the action, and that the other agents and employees of the Trust Company who had per-

formed duties for it in connection with the trust are no longer in its employ and are no longer available as witnesses.

Although no specific claim for damages is made against the Trust Company, it is charged with fraud. Its good reputation is one of its main assets. Had the plaintiff, within any reasonable time after the execution of the agreement, asserted the claims he now makes, the Trust Company could have started an action for a declaratory judgment and the matter could have been determined before his present claims became stale and at a time when its witnesses were available. At the present time it would be impossible for the court to ascertain the truth of the matters in controversy. Its rights have been seriously prejudiced by the undue delay of the plaintiff in bringing his claims to its attention. Under the circumstances equity must refuse plaintiff the use of the courts to enforce his claims as against the Trust Company.

In his second cause of action the plaintiff alleges that the intended purpose of the parties in executing the agreement was that financial security be afforded for the individual defendants during the continued marriage of the plaintiff and his then wife. She now alleges that she made no demand or request for alimony, division of property, or support allowances for the children in her divorce action because of the agreement, which in her opinion was absolute in its terms and without any right of revocation on the part of the plaintiff. Her right to assert those claims in her divorce action has been lost or seriously prejudiced because of plaintiff's delay. The judgment of divorce was obtained in the state of California. A copy of the decree is not in the record. It must be held under the facts and circumstances of this case that the plaintiff's long delay in asserting his claims has seriously prejudiced the rights of the individual defendants, and plaintiff must be denied equitable relief because of laches.

*By the Court.*—Order and judgment affirmed.