CITY OF MILWAUKEE, Respondent, v. FIREMEN RELIEF ASSOCIATION OF THE CITY OF MILWAUKEE, Appellant.

*March 1—April 11, 1967.*

352

For the appellant there were briefs by *Quarles, Herriott, Clemons, Teschner & Noelke,* attorneys, and *L. C. Hammond, Jr.,* and *John S. Holbrook, Jr.,* of counsel, all of Milwaukee, and oral argument by *Mr. Holbrook.*

For the respondent there was a brief by *John J. Fleming,* city attorney, and *George A. Bowman, Jr.,* assistant city attorney, and oral argument by *Mr. Bowman.*

BEILFUSS, J. The issues are as follows:

(1) When a cause of action is noticed or raised in the pleadings of a declaratory judgment action, is the statute of limitation tolled by those pleadings?

(2) Did the city's payment of the amount owing March 1, 1958, take all past claims out of the operation of the statute of limitations?

(3) Is the city's obligation under the 1885 law one of trust which takes the association's claims out of the operation of the statute of limitations?

The claim involved herein is based upon an 1885 legislative act which imposes an obligation on the city. Each March 1st the city becomes liable to the association for an amount equal to one eighth of all fire insurance rate paid into the city treasury during the previous year. A new obligation arises each year in a different amount, depending on the amount of fire insurance premium paid.

Sec. 893.19 (4), Stats., provides a six-year limitation upon:

"An action upon a liability created by statute when a different limitation is not prescribed by law."

No different limitation is prescribed by law. The trial court held that this six-year statute of limitations is applicable to this case and that it was tolled when the asso-

ciation filed its petition for supplementary relief in August, 1964. The association contends that, if the statute is applicable, this holding is in error and that the pleadings served in 1959 tolled the statute.

The computation of time for the running and for the tolling of statutes of limitation is governed by sec. 893.48, Stats., which provides:

**"Computation of time, basis for.** The periods of limitation, unless otherwise specially prescribed by law, must be computed from the time of the accruing of the right to relief by action, special proceedings, defense or otherwise, as the case requires, to the time when the claim to that relief is actually interposed by the party as a plaintiff or defendant in the particular action or special proceeding, except that as to a defense, set-off or counterclaim the time of the commencement of the plaintiff's action shall be deemed the time when the claim for relief as to such defense, set-off or counterclaim is interposed."

For the association, "the time of the accruing of the right to relief by action" is March 1st of each year as to the amount then due and owing from the city. Since the 1885 law contemplates a payment "on or before the first day of March in each year," and since under the stipulated facts the amounts of fire insurance rate paid the city have varied from year to year, surely a new cause of action arises on the first day of March of each year for one eighth of the previous year's fire insurance rate paid the city. Each March 1st the statute *begins running* as to the cause of action then accruing. The problem presented is whether the time of the pleadings in 1959 will be deemed to be "the time when the claim to that relief is actually interposed by the party as a plaintiff or defendant in the particular action or special proceeding."

The trial court in effect held that not until service of the association's petition for supplemental relief in 1964 was the association's "claim for relief" interposed. However, that petition was predicated upon the 1961 judgment which decided issues raised by the pleadings

in early 1959. The prayers for relief in the city's complaint and in the association's answer both ask for the court's determination of the legal effect of the 1885 law. The third alternative prayer in the complaint requests the court's ruling, with reference to the 1885 law: "determining or adjudicating the legal rights or liabilities of plaintiff so as to permit plaintiff to terminate its alleged obligations thereunder."

Although the trial court did not go into the dollars-and-cents liability issue when it decided the repealer issue in 1960, it does not follow that the association's claim was not "interposed" by the pleadings in 1959.

This conclusion is apparent in light of the function and actual operation of the declaratory judgment statute in Wisconsin. This court has recognized that a cause of action for declaratory relief may properly embrace in a single cause of action claims for further consequential relief which might otherwise be regarded as separate causes of action, including equitable relief and damages.

"It is not the role of declaratory judgment to take the place of an action for damages. But in a proper case for declaratory relief, where the court has entered a decree adjudicating the rights of parties and where the granting of relief in the form of damages may be predicated on that determination of rights, the court making the determination should also make that award of damages." *F. Rosenberg Elevator Co. v. Goll* (1963), 18 Wis. (2d) 355, 363, 118 N. W. (2d) 858.

In the instant case we do not have the hint of more than one basis of the claim. All the association's rights, all the city's obligations and all the legal issues have their origin in sec. 2 of ch. 176, Laws of 1885. The fact that the complex repealer issue was separated for trial upon a stipulation of the parties with separate judgment thereon should have no effect on the notice-giving function of the pleadings. To hold otherwise would allow prospective defendants to come into court with declaratory judg-

ment actions and have the statute run in their favor until the opposing party either files for supplementary relief or files a separate action. The result would be a multiplicity of lawsuits arising out of the same transaction— a situation the law should be loathe to encourage.

In this case both the complaint and the answer, even though this is an action for declaratory judgment, interpose the issue of financial liability so as to toll the statute of limitations. Going back six years from the complaint or the answer, the statute of limitations would bar all causes of action arising prior to February, 1953. We are of the opinion that the trial court should have entered judgment for the association in the amount equal to one eighth of the fire insurance rate paid the city for the years 1952, 1953, 1954, 1955, and 1956. (Amounts for subsequent years have been paid.)

The association envisions the city's obligation as one huge continuing debt dating back to 1892 and asserts that the city's voluntary payment of the amount due March 1, 1958, takes the entire obligation out of the statute of frauds under statute sec. 893.46 Payment, effect of, not altered. Even if we were to assume one enormous debt, the association has failed to show how the city's payment of its 1958 obligation in August of 1958 (when the city was on notice of the association claim back to 1892) was an express acknowledgment of the city's intent to renew the entire debt. Our court has recognized the necessity of such express acknowledgment:

"It is well established in this state that in order to renew a debt once barred, there must be an express acknowledgment of the debt with the intention to renew it as a legal obligation. A partial payment, to operate as a new promise and avoid the bar of the statute of limitations, must be made under such circumstances as to warrant a clear inference that the debtor recognized the debt as an existing liability, and indicated his willingness, or at least an obligation, to pay the balance. . . ."

*Estate of Hocking* (1958), 3 Wis. (2d) 79, 86, 87 N. W. (2d) 811.

The very commencement of the declaratory action seems to demonstrate the city's unwillingness or refusal to pay pre-1958 obligations.

The association contends that the 1885 law imposed upon the city a trust obligation which removes this case from the operation of the statute of limitation, and that the trial court erred in holding there is no trust.

The record gives no indication that an express trust was created by the legislature in 1885 nor that a trust is to be implied. Sec. 2 of ch. 176, Laws of 1885, does not create an identifiable, segregated trust corpus, does not designate a "trustee" or a "beneficiary," and does not place any express fiduciary duty upon the city. It merely obliges the city to pay the association an amount of certain measurement each year. No intent to create a trust is expressed.

"An express trust is one which comes into being because a person having the power to create it expresses an intent to have the trust arise and goes through the requisite formalities." Bogert, Law of Trusts (hornbook series, 4th ed. 1963), p. 13, sec. 8.

Lacking expressed intent and formalities, no express trust was created by the 1885 law.

If there is no express trust, then the association must be asserting a constructive trust created by the 1885 law. A constructive trust is not really a trust in the usual sense, but rather the generic name for an aggregate grouping of particular fact situations upon which equity will impose liability to prevent unjust enrichment and unfairness.

"Constructive trusts are created by courts of equity whenever the title to property is found in one who in fairness ought not to be allowed to retain it. . . .

"The wronged party generally has one or more alternative remedies open to him, and must elect between them and a constructive trust. In order to secure the constructive trust he is not required to show the inadequacy of

legal remedies, but he must do equity by performing such acts as the court in its discretion decides are necessary in order to do justice to the defendant." Bogert, Law of Trusts (hornbook series, 4th ed. 1963), p. 208, sec. 77.

In this case the association has a remedy at law based upon the statutory obligation. Nevertheless, it may come into equity and assert the 1885 law as the basis of a constructive trust obligation on the part of the city. But if it wishes to enter equity, it can do so only if it wishes to subject itself to all equitable doctrines, including laches. For sixty-five years the association slumbered on its rights. Our court has held that even an express trust is no longer enforceable because of laches where the beneficiary failed to call for an accounting for over twenty-four years. *Becker v. First Wisconsin Trust Co.* (1957), 274 Wis. 404, 80 N. W. (2d) 440. Thus laches has long since nullified any constructive trust obligations which the 1885 law may have imposed upon the city.

While we agree with the trial court that no express trust was created and that each year the city became liable for a separate and distinct obligation successively subject to the six-year statute of limitations, we must reverse the judgment because of our opinion that the statute of limitations was tolled by the commencement of the action in 1959. Upon remand the trial court shall, upon the record or upon additional proof if deemed necessary by the trial court, determine the amounts due to the association after February of 1953 and enter judgment accordingly for the association.[3]

*By the Court.*—Judgment reversed and remanded with directions.

HANLEY and HANSEN, JJ., took no part.

---

[3] Whether interest is to be allowed to the association for amounts due after February, 1953, is not before us. If the issue arises we commend to the court and counsel our opinion in *Associated Hospital Service v. Milwaukee* (1962), 18 Wis. (2d) 183, 118 N. W. (2d) 96.