JOE E. NUSBAUM, Secretary, Department of Administration
You request my opinion on two questions regarding sec. 102.44
(1), Stats., created by ch. 148, Laws of 1971. Such section provides a "supplemental benefit" to individuals receiving workmen's compensation benefits for total disability resulting from injury occurring prior to February 1, 1970.
New sec. 102.44 (1), Stats., reads in material part:
"102.44 (1) Notwithstanding any other provision of this chapter, every employe who is receiving workmen's compensation under this chapter for a total disability resulting from an injury which occurred prior to February 1, 1970, shall receive supplemental *Page 70 
benefits which shall be payable in the first instance by the employer or his insurance carrier. These supplemental benefits shall be paid only for weeks of disability occurring after the effective date of this subsection (1971) and shall continue during the period of such total disability subsequent to that date.
"* * *
"* * *
"(c) The employer or insurance carrier paying the supplemental benefits required under this subsection shall be entitled to reimbursement for each such case from the fund established by s.102.59, commencing one year from the date of the first such payment and annually thereafter while such payments continue. Claims for such reimbursement shall be approved by the department."
You state your first question as follows:
"We request your opinion as to whether or not the supplemental benefit provided for under s. 102.44 (1) is in conflict with Article IV, Section 26, of the Wisconsin Constitution."
Article IV, sec. 26, Wis. Const., reads in part:
"The legislature shall never grant any extra compensation to any public officer, agent, servant or contractor, after the services shall have been rendered or the contract entered into; * * *."
The principal question is whether the "supplemental benefits" under sec. 102.44 (1), Stats., is "compensation" within the meaning of this constitutional provision in those instances when supplemental benefits might become payable to "any public officer, agent, servant or contractor." The answer to this question depends largely on the purpose of the "supplemental benefits" since the constitutional prohibition only strikes down extra compensation for the rendition of services or the performance of a contract.
An examination of sec. 102.44 (1), Stats., reveals that the "supplemental benefits" are in the nature of workmen's compensation payments for total disability. The Wisconsin Supreme Court has specifically held that the liability of an employer to an employe under the Workmen's Compensation Act is *Page 71 
not contractual in nature. In Val Blatz Brewing Co. v. IndustrialComm. (1930), 201 Wis. 474, 478, 230 N.W. 622, the court stated:
"Liability under the workmen's compensation act is, strictly speaking, neither tortious nor contractual in its nature. It is an obligation imposed by law which arises out of the status created by the employment. The liability arises out of the law itself, rather than out of the contract of the parties. The law operates upon the status and attaches certain rights and obligations to that status. The relationship of employer and employee has its origin in the contract of employment; but when that relationship is created by the contract, the respective rights and liabilities with reference to compensation depend upon the provisions of the law, not upon the contract of the parties. The fundamental idea upon which liability is imposed is that an injury to an employee, like damage to a machine, is a burden that should be borne by the product of the industry and ultimately paid by those who consume this product."
It can be seen from this quote that the court has made a clear distinction between employer-employe liability under the Workmen's Compensation Act and employer-employe liability under the express or implied terms of an employment contract. In the court's mind, workmen's compensation liability was statutorily created and was based upon police power.
The distinction between liability under the Workmen's Compensation Law and contractual liability under a contract of employment has been maintained consistently by the court ever since the first major test case involving workmen's compensation,Borgnis v. Falk Co. (1911), 147 Wis. 327, 366, 133 N.W. 209.
In Anderson v. Miller Scrap Iron Co. (1919), 169 Wis. 106,170 N.W. 295, the court's extensively discussed this distinction. The court stated:
"* * * It is true that the liability imposed by the act grows out of and is incidental to a relationship based upon contract, but that does not make it contractual any more than it made the [tort] liability of the employer at common law contractual, for that, too, was a liability which grew out of and was incidental to a like relationship. If, as is said in some cases, . . . the liability of the employer under the law is a contract obligation, then the rights and *Page 72 
liabilities of the parties would always be referable to the law in force at the time the contract of employment was entered into.Such is not the case. Borgnis v. Falk Co. 147 Wis. 327, 366,133 N.W. 209. . . . In the case last cited it is said: `Acceptance of the act, whether made expressly or impliedly, as permitted by the act, made its provisions a part of these contracts of employment;' . . . If this be true, the law is not subject to amendment as against existing contracts in any respect which would impair the contract within the meaning of that term as used in the constitution. Such construction is to be avoided in the interest of a simple and correct administration of the law, and should not be adopted unless the clearly expressed legislative intent excludes other construction.
"The liability of the employer under the act is not tortious and is not contractual in the sense that it should be consideredas a covenant or part of the contract, but it is purelystatutory. . . . He may elect not to come under the law, but when he does elect to come under it his liabilities are not subject to modification by contract between himself and his employee. It isthe law, not the contract, which prescribes the conditions andthe rate of compensation.
"* * *
"The liability of the employer under the act being statutory, the act enters into and becomes a part of every contract, not as a covenant thereof, but to the extent that the law of the land is a part of every contract. . . . Just as the law of negotiable instruments is a part of every promissory note to the extent that the rights and liabilities of the parties thereto must be determined with reference to the law of the place where the promissory note is made, executed, and delivered, so the rights and liabilities of every employer and employee who enter into a contract of employment within this state must be determined with reference to the workmen's compensation act. * * *" (Emphasis added) 169 Wis. at 113-115.
It follows from the foregoing Wisconsin cases that benefits paid to an employe under the Workmen's Compensation Act are not paid because of any contractual obligation of the employer. Rather, they are based upon a statutorily created liability. Because the employe's right to receive workmen's compensation benefits if he is injured is statutory, rather than contractual, the workmen's compensation *Page 73 
benefits are not payment (compensation) for services rendered by the employe under his contract of employment.
In addition it should be pointed out that workmen's compensation benefits are not paid for past services rendered but to compensate for the loss of future employment by reason of disability.
"His disability reaches into the future not the past; his loss must be thought of in terms of its impact on probable future earnings . . ." (See Larsen, Workmen's Compensation, Vol. 2, sec.60.12)
Although there is some language in State ex rel. Thomson v.Giessel (1952), 262 Wis. 51, 53 N.W.2d 726, that might suggest a contrary conclusion, the cases are clearly distinguishable. The subject matter in Giessel was retirement benefits for services previously performed which is substantially different than workmen's compensation benefits for the loss of future employment. As a result, the Giessel case is not applicable here.
Since the State of Wisconsin is treated as an employer in the same manner as private employers under sec. 102.03 (1) (c) (2), Stats., the above analysis of workmen's compensation laws are clearly applicable to the State. It is therefore my opinion that payment of the "supplemental benefits" under sec. 102.44 (1), Stats., is not precluded to state public officers and employes by Art. IV, sec. 26 of the Wisconsin Constitution.
You additionally question whether the fund established under sec. 102.59, Stats., is in the nature of a trust for the benefit of second injury disability cases and, therefore, whether such fund can be diverted for the purpose of raising disability benefits.
There is no showing of intent in sec. 102.59, Stats., to create an express trust nor is the requisite language present to create such a trust. Our concern then is limited to whether a constructive trust is in effect created by sec. 102.59, Stats. The standards and rationale behind express and constructive trusts are covered in Milwaukee v. Firemen Relief Asso. (1967),34 Wis.2d 350, 149 N.W.2d 589, in these words at page 360: *Page 74 
"`An express trust is one which comes into being because a person having the power to create it expresses an intent to have the trust arise and goes through the requisite formalities.' Bogert, Law of Trusts (hornbook series, 4th Ed. 1963), p. 13, sec. 8.
"Lacking expressed intent and formalities, no express trust was created by the 1885 law.
"If there is no express trust, then the association must be asserting a constructive trust created by the 1885 law. A constructive trust is not really a trust in the usual sense, but rather the generic name for an aggregate grouping of particular fact situations upon which equity will impose liability to prevent unjust enrichment and unfairness.
"`Constructive trusts are created by courts of equity whenever the title to property is found in one who in fairness ought not to be allowed to retain it. . . .'"
The "second injury fund" was created by the legislature for the following purpose as stated in footnote 75, page 66 of the Department of Industry, Labor and Human Relations pamphlet entitled "Workmen's Compensation Act of Wisconsin":
"This subsection has a two-fold purpose: First to eliminate any incentive for discrimination against the employe who has serious previous disability when he comes to seek re-employment because of the employer's fear, real or otherwise, that the loss of another member may subject him to very large indemnities on the ground that such loss would cause total or near total disability; second, to secure to the employe sustaining the loss or total impairment of a second member such amount of indemnity as the seriousness of the combined disabilities calls for.
"Direct liability of the employer in case of the loss of the second member is made the same as for the loss of the first member, and the injured employe's rights are conserved by orders drawn on the fund for the balance of his indemnity. Primary liability of the employer for payment of $1,500 to the fund is insurable."
While subsection (3) appropriates to the department all moneys paid into the state treasury under sec. 102.29, Stats., subsection (4) requires the commission to "set aside in the state treasury suitable *Page 75 
reserves to carry to maturity the liability for special additional indemnity in each case, and for any contingent death benefit."
It, therefore, appears that vested rights of those sustaining injury which qualifies under sec. 102.59, Stats., prior to the effective date of ch. 148, Laws of 1971, are adequately protected by the requirement of subsection (4). Since there is no indication of legislative intent to curtail the benefit available under sec. 102.59, we may assume that there is a surplus in such "second injury fund" available for appropriation by the legislature. Lacking any showing of any inequity toward those who are presently benefiting under sec. 102.59, Stats., I find no ground upon which a court of equity would impress a constructive trust.
It is, therefore, my opinion that the "second injury fund" created by sec. 102.59, Stats., is not impressed with a constructive trust which precludes diversion of such fund for the purpose of raising disability benefits under ch. 148, Laws of 1971.
RWW:JDJ