Gershengorn, J.
Plaintiff, Maureen Buckley Holland (“Holland”), brings this action for legal malpractice and violation of G.L.c. 93A, alleging that the defendant, Jeffrey H. Fisher’s (“Fisher”), simultaneous representation of her and the Malden Police Patrolmen's Association (“MPPA") constituted a conflict of interest and caused Fisher to represent Holland in a manner below the standard expected of a competent attorney. The underlying facts are not pertinent to this discovery motion which is brought by Holland in response to the deposition of Fisher which began on August 23, 1994 and continued on August 24, 1994.
BACKGROUND
Holland initially served Fisher with a Request for Production asking him to produce documents regarding Holland’s efforts to be reinstated as a Malden Police Officer. These documents were to include all memoranda and correspondence reflecting communications with MPPA officers (and/or members) regarding Holland’s reinstatement efforts. Fisher moved for a protective order, arguing his communications with the MPPA during the time that he also represented Holland (approximately January 8, 1985 to April 29,1992) were protected by the attorney-client privilege and by the Work Product Doctrine. On December 31, 1992, the Court (O’Toole, J.) denied Fisher’s motion and ordered Fisher to either produce the requested documents or itemize those documents for which a privilege was claimed.
Fisher then listed the claimed privileged documents. Holland moved to compel. The court did an in camera inspection and ordered production of the documents, excluding (1) those created after Fisher’s representation of Holland ceased, and (2) those containing communications with James Holland.[1] Fisher appealed to the Single Justice, and the appeal was denied (Porada, J.). Fisher ultimately produced the requested documents.
Holland moves to compel Fisher to answer several questions which he was instructed by his counsel, Thomas E. Peisch (“Peisch”), not to answer on the grounds of attorney-client privilege. Holland also seeks that this Court admonish Fisher and Peisch “not to confer, take breaks, or otherwise engage in improper coaching with unanswered questions pending.”
This court has carefully reviewed the papers and, to ensure clarity among all parties, each question as presented at the deposition, for which Holland seeks to compel an answer, is outlined and discussed individually below.
A. Fisher’s Communications with the MPPA and the Attorney-Client Privilege.
The purpose of the attorney-client privilege is “to encourage full and frank communication between attorneys and their clients and [to] promote broader public interests in the observance of law and the administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer being fully informed by the client.” Upjohn Co. v. United States, 449 U.S. 383, 389 (1981) “The rule which places the seal of secrecy upon communications between client and attorney is founded upon the necessiiy, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequence or the apprehension of . . . disclosure.” In the Matter of a John Doe Grand Jury Investigation, 408 Mass. 480, 482 (1990) (citation omitted): see also, DR 4-101, Canons of Ethics and Disciplinary Rules and Regulating the Practice of Law, SJC Rule 3:07, 382 Mass. 768, 778-79 (1981) (reinforcing the attorney’s duty to preserve the confidences and secrets of the client).
The primary purpose of the privilege then, although protecting communications of both attorney and client during the relationship, is to benefit the client. This is further evidenced by the fact that the client is the holder of the privilege and is the only person who can waive the privilege. In addition, the only reason that a privilege does not apply where the client asserts wrongdoing on the behalf of the attorney is to permit the attorney to properly defend the action. Commonuvealth v. Woodberry, 26 Mass.App.Ct. 636 (1988); DR *168 4-101(c)(4), 382 Mass, at 778; see also McCormick, supra, at 338 (“in controversies between attorney and client the privilege is relaxed, [because] of practical necessity that if effective legal service is to be encouraged, the privilege must not stand in the way of the lawyers just enforcement of his rights”).
Here, one attorney [Fisher] simultaneously represented two clients [Holland and the MPPA] with alleged adverse interests. One client [Holland] brings an action against the attorney [Fisher] based on the alleged conflict of interest. The issue is whether the communications, made during the dual representation period, between the attorney [Fisher] and one client [MPPA] outside the presence of the other client [Holland] is privileged. While this particular situation has not been addressed by the appellate courts of the Commonwealth, the privilege has been held not to apply in similar situations.[2]
Despite the obvious significance of this doctrine in our justice system, the attorney-client privilege is not absolute.[3] The Supreme Judicial Court has carved out numerous exceptions to the privilege. For instance, the privilege does not apply to disputes between clients who share the same attorney, Thompson v. Cashman, 181 Mass. 36 (1902), to disputes between joint clients, Beacon OiL Co. v. Perelis, 263 Mass. 288, 293 (1982), and to disputes between client and attorney regarding collection of a fee or allegations of wrongful conduct against the attorney; Commonwealth v. Brito, 390 Mass. 112, 119 (1983); Commonwealth v. Woodberry, 26 Mass.App.Ct. 636 (1988). See also Proposed Mass.R.Evid. 502(d) which essentially incorporates the existing exceptions from the protection of the attorney-client privilege. Although the privilege does not apply to disputes between clients who share the same attorney, Thompson, supra, and to disputes between joint clients, Beacon Oil Co., supra, this case goes “one step beyond the joint consultation where communications by two clients are made directly in each other’s hearing [and instead] is the situation where two parties separately interested in some contract or undertaking, . . . engage the same attorney to represent their respective interest, and each communicates separately with the attorney about some phase of the common transaction.” McCormick, Evidence §91, at 337-38 (John W. Strong ed. 1992). Nonetheless, “it seems that the communicating client, knowing that the attorney represents the other party also, wouldn’t ordinarily intend that the facts communicated should be kept secret from him.” Id. See also Catino v. Travelers Insurance Co. Inc., 136 F.R.D. 534, 537 (D.Mass. 1991) (to the extent that there was an attorney-client relationship with both the insurance company and the insured, the court held “there can be no privilege on the part of the company to require the lawyer to withhold information from his other client, the policy holder”).
The Fisher-MPPA and the Fisher-Holland communications made during the time that Fisher represented both Holland and the MPPA are not protected by the attorney-client privilege. Accordingly, this court finds the privilege does not apply to the challenged testimony presented below.
During the Fisher Deposition, Peisch instructed Fisher not to answer the following deposition questions.
Q: Did the Executive Board have a unanimous vote on March 4, 1991 to hold off the signing of any documents relative to Maureen Buckley? (8/24/94, page 163, lines 11-13.)
Q; What did you tell the Executive Committee at the meeting on March 4, 1991? (8/24/94, page 164, lines 19-20.)
Q: At the March 4, 1991 meeting did you do anything or say anything to try to convince the Executive Committee to agree to the signing of any documents relative to Maureen Buckley Holland’s reinstatement? (8/24/94, page 167, lines 1-5.)
Holland’s counsel questioned Fisher about a memo written by him describing a March 25,1991 conversation with MPPA president Rocky Brooks. The memo reveals Mr. Brooks told Fisher “he will talk to the rest of the guys in the Executive Committee and then get back to me tomorrow to let me know whether I should proceed to complete this deal with the City of Malden.” (8/24/94, page 182, lines 12-18.) Peisch instructed Fisher not to answer these questions relating to that memo:
Q: Did you tell Mr. Brooks that the MPPA had no input into whether or not the deal should be completed? (8/24/94, page 183, lines 10-12.)
Fisher was also questioned about an office note concerning his contacting the City Solicitor with respect to suggested changes in a proposal for Holland’s reinstatement. (8/24/94, page 186, line 24, page 187, lines 1-3.) Peisch instructed Fisher not to answer the following question:
Q. Why did you have to present the information to the Executive Committee before you could get back to Mr. Shapiro on these issues? (8/24/94, page 187, lines 24-page 188, line 2.)
Fisher, however, ultimately did answer the question, excluding any communication between himself and the MPPA. (8/24/94, page 188, lines 6-15.)
Fisher was also questioned about office notes concerning an MPPA Executive Committee meeting held on April 2, 1991. These notes suggest that Holland’s case was discussed. Fisher was instructed not to testify about anything which happened at this meeting which was not reflected in the notes. Peisch instructed Fisher not to answer the following questions:
Q: What else transpired that is not reflected in that note? (8/24/94, page 189, lines 14-15.)
Upon Fisher’s testimony that he did not remember conversations with members of the Executive Committee not reflected by his notes (8/24/94, page 191, lines 4-23), Peisch instructed Fisher not to answer.
*169 Q: What was said? (8/24/94, page 191, lines 24, page 192, line 2.)
Q: At that April 2, 1991 meeting did you do or say anything to try to persuade the Executive Committee not to demand the changes that are set forth in the memo to the agreement? (8/24/94, page 195, lines 4-7.)
Fisher was also questioned regarding an April 10, 1991 union membership meeting, which is referenced in one of Fisher’s memos. Peisch instructed Fisher not to answer these questions concerning that union meeting:
Q: Is there anything which transpired at that union meeting which is not reflected in substance in Exhibit 34? That is a Yes or No question.
A: Sure.
Q: What is that? (8/24/94, page 201, lines 16-20.)
Q: My question is this: Did you tell the union membership at the meeting on April 10, 1991 that you thought Maureen Buckley Holland would lose her case? (8/24/94, page 205, lines 21-22.)
Q: Did you do anything during the April 10, 1991 meeting to try to persuade the union membership to vote against Kevin Molis’s motion (to wait until July to consider any agreement for Plaintiffs reinstatement) that is summarized in Exhibit 34? (8/24/94, page 211, lines 11-14.)
Questions regarding an April 24, 1991 letter Fisher sent to union president Rocky Brooks, were met with Peisch’s instruction not to fully answer.
Q: Looking at the second paragraph, first sentence “as you undoubtedly recall from the April 10, 1991 association membership meeting at which I was present, the only issue I raised on this matter was out duty of fair representation to Maureen Buckley.” What did you mean by that sentence? (8/24/94, page 219, lines 2-8.)
Fisher was further instructed to exclude any communications between himself and the MPPA in answering:
Q: Well, following up on that answer, in the fourth paragraph you say that, as you made reference — to quote “this is just a further exacerbation of the type of problem which I was concerned about when we first took this case over from Attorney Dunn. What did you mean by a further exacerbation of this type of problem”? (8/24/94, page 220, lines 15-page 221, line 6.)
Fisher testified he sent this letter to union president, Mr. Brooks, in order to contact Brooks to discuss these matters. Peisch instructed Fisher not to answer this follow-up question.
Q: Why did you want to discuss the matter with Mr. Brooks? (8/24/94, page 223, lines 8-9.)
Peisch finally instructed Fisher not to disclose any communications between himself and the MPPA in answering the following question:
Q: Directing your attention to the next to the last paragraph of Exhibit 37, which reads, “decisions made by other persons, such as attorney Dunn and James Holland at other times and now attorney Louison, are now impacting upon the association itself.” What did you mean by the phrase, “decisions are now impacting upon the association itself’? (8/24/94, page 223, line 24 to page 224, line 13.)
B. Fisher’s State or Federal Filings, and the Attorney/Client Privilege
Peisch asserted the attorney-client privilege and instructed Fisher not to answer the following questions:
Q: Do you prepare yearly union filings as part of your job as general counsel?
(8/23/94, page 111, lines 8-page 112, line 3.)
Q: Are there any government filings which you prepared routinely on behalf of the union during the period of time 1986 to April, . . . 1992?
Q: Are there routine filings which the union files each year analogous to a corporate certificate or something of that nature?
(8/23/94, page 112, lines 5-10, 14-16.)
Q: Mr. Fisher, would you please tell me, to the best of your knowledge, what documents the MPPA has filed with the Commonwealth of Massachusetts during 1994?
(8/23/94, page 114, lines 19-22.)
Q: What government filings did the MPPA file with the federal government in 1994?
Q: What documents did the MPPA file with the Commonwealth of Massachusetts in 1991?
(8/23/94, page 115, lines 16-17, 21-23.)
Q: What documents did the MPPA file'with the federal government in 1991?
Q: What documents did the MPPA file with the Commonwealth of Massachusetts in 1992?
Q: What documents did the MPPA file with the federal government in 1992?
(8/23/94, pages 116-page 117.
Fisher’s argument that these questions were not limited to the time period during which Fisher worked on the opposition to Holland’s termination is without merit. Clearly, communications intended to be conveyed to others are not privileged. Drew v. Drew, 250 Mass. 41, 44-45 (1924). This court finds the nonprivileged material, sought by Holland, relevant to the pending action and reasonably calculated to lead to discoverable evidence. Hull Mun. Lighting Plant v. Massachusetts Mun. Wholesale Elec. Co., 414 Mass. 609, 615 (1993).
C. Miscellaneous Questions and Peisch’s Instruction Not to Answer
For a variety of,reasons, listed below, these miscellaneous questions were met with Peisch’s instruction not to answer.
*170 Q: Did you ever recommend to any of the ones you represented through the union that they seek their own private attorneys? (Attorney-client privilege asserted, 8/23/94, page 73-75.)
Q: What percentage of your income comes from representing the MPPA? (Relevancy asserted, 8/23/94, page 102, lines 6-7.)
Q: Was there a retainer agreement between you and the MPPA that was in force between 1986 and April of 1992 with respect to their retention of you as general counsel? (Relevancy and attorney-client privilege, 8/23/94, page 106.)
As previously discussed, this court finds no attorney-client privilege applicable to the Fisher-MPPA communications as well as the Fisher-Holland communications during the dual representation period. The above questions are relevant to the action in which Holland claims the simultaneous representation of her and the MPPA constituted a conflict of interest and caused Fisher to represent Holland in a manner below the standard expected of a competent attorney.
D. Coaching the Witness and Private Conversations with Witness During Deposition
The remaining issue concerns the general conduct of lawyers and witnesses at a deposition. Specifically, Holland challenges the taking of breaks and private conversations between Peisch and Fisher during the deposition. (See 8/23/94, pages 61, 63, lines 21, 3 respectively; 8/23/94, page 69, line 23-page 72, line 3.)[4]
Few plenary appeals are primarily concerned with discovery motions. Rulings on such motions are interlocutory and normally are accepted (albeit sometimes grudgingly) by the parties. Consequently, the opinions of the appellate courts of the Commonwealth are not a fertile source of knowledge on this matter. This court however has wide discretion in determining the conduct and scope of discovery. Solimene v. B. Grctul & Co. KG, 399 Mass. 790, 799 (1987); GTE Products Corp. v. Stewart, 414 Mass. 721, 725 (1993). Although the issue has not been substantially developed in the case law, many courts have held that private conferences between deponents and attorneys during the deposition are improper unless for the purpose of determining the existence of a privilege. Hcdl v. Clifton Precision, 150 F.R.D. 525, 527 (E.D. Pa. 1993), citing In re Braniff, Inc., Nos. 89-03325-BKC1, 92-911, 1992 WL 261641 (Bankr M.D. Fla. Oct. 2, 1992); RTC v. KPMG Peat Marwick, Civ.A. No. 92-1373, 19992 WL 245705 (E.D. Pa. Sept. 19, 1992); In re Domestic Air Transp Antitrust Litig., 1992-1 Trade Cases para 69, 731, 1990 WL358009 (N.D. Ba. Dec. 21,1990); In re San Juan DuPont Plaza Hotel Fire Litig., No. MDL 721, 1989 WL 168401 (D.R.P. Dec. 2, 1989); InreRhode Island Asbestos Cases; R.I.M.L. No. 1 (D.R.I. March 15, 1982); In re Asbestos-Related Litig., No. CP-81-1 (E.D.N.C. Sept. 15, 1981).
The purposes of the discovery rules and deposition rules are to elicit facts before trial, to provide equal access to information, and to memorialize a witness testimony early in the proceedings. These purposes were altogether thwarted at the Fisher deposition. The nature of this action, primarily based on a conflict of interest, undoubtedly involves numerous questions concerning the attorney client privilege and similarly, recognizes that the disclosure of a privileged communication waives the attorney-client privilege. When such questions arise at a deposition, the “attorney should place on the record the fact that a conference occurred, the subject matter of the conference, and the decision reached as to whether to assert a privilege.” Hall, supra at 529-30.
There is no proper need for the witness’s own lawyer to act as an intermediary, interpreting questions, deciding which question the witness should answer, and helping the witness formulate answers. The witness comes to the deposition to testify, not to indulge in a parody of Charlie McCarthy, with lawyers coaching or bending the witness’s words to mold a legally convenient record.
Hall, supra at 528. Therefore, Mr. Peisch’s contention, that a lawyer and client have an absolute right to confer during the course of the client’s deposition, is absolutely incorrect.[5]
ORDER
For all the foregoing reasons, it is hereby ORDERED:
1. The deposition of the defendant, Jeffrey H. Fisher, for the purposes of answering the questions outlined in this decision, shall take place no later than thirty (30) days from the date of this Order.
2. At this deposition, the defendant’s attorney, Thomas Peisch, shall conduct himself in accordance with the procedures outlined in the decision.
3. The defendant, Jeffrey H. Fisher, shall bear the costs of this deposition.

Mr. Holland, Plaintiffs husband, later authorized the release of those communications.

Similarly there is not an abundance of guidance from other jurisdictions. Courts have, however, held the privilege inapplicable in similar situations. Boyle v. Kempkin, 9 N.W.2d 589, 593 (1943) (attorney-client privilege is implicitly waived when both parties knew that the attorney was acting on behalf of the other); Aysseh v. Lawn, 452 A.2d 213 (N. J. 1982) (“communications are privileged only when made ‘in professional confidence.’ That ‘confidence’ is not possible when the representation involves adverse parties”); Henson v. State, 261 P.2d 916 (Okla. 1953) (attorney-client privilege has been held inapplicable in situations where the attorney was employed in professional capacity acting as negotiator in seeking to bring about an agreement between two parties on details necessarily involved in consummating a transaction).

The application of the privilege “sometimes results in the exclusion of evidence which is otherwise relevant and material, contrary to the philosophy that justice can be achieved only with the fullest disclosure of the facts, [therefore] the privilege cannot be treated as absolute; rather, it must be strictly limited to the purposes for which it exists.” Pappas v. Holloway, 787 P.2d 30,34 (Wa. 1990) (former clients’ bringing *171 legal malpractice action against former attorney constituted implied waiver of attorney-client privilege as to all attorneys who were involved in defending former clients in underlying action).

Mr. Peisch: Read the question again please. (Question read back.)
Mr. Peisch: I want to have a consultation.
Mr. Karon: I object to that with a question pending.
Q: Can you not answer without talking to Mr. Peisch?
Mr. Karon: Let the record reflect there is a question pending and the counsel is leaving to go discuss with his client. (Conference between witness and his attorney) 3:05 p.m. to 3:07 p.m. (Question read back.)
Mr. Peisch: I object to that question.
Mr. Karon: No. You are entitled to make an objection to preserve your rights. You are not entitled to leave the deposition with a question pending to go coach your witness, both of which you have done.
Mr. Peisch: There is no coaching going on here.
Mr. Karon: You left the room for a couple of minutes with that question pending before he had given an answer to it. Mr. Peisch: So what?
Mr. Karon: That is absolutely improper.
Mr. Peisch: You said that before and you are dead wrong. Mr. Karon: I am not dead wrong.
Mr. Peisch: Do not answer that question.

See (8/23/94, pages 69-72):
Mr. Peisch: I am going to make this simple. Mr. Fisher, as far as I am concerned, is free to consult with me whenever he wants to. That is why I am here. As far as I am concerned, if there is a question pending as to which Mr. Fisher wants my advice, he is free to ask for it, he is going to ask for it, and I am going to give it to him.
Mr. Karon: He is not entitled to ask you how to answer a question with a question pending.
Mr. Peisch: You have no idea, and you never will know what it is he asks me. That is privileged.