Gordon, Robert B., J.
Presented for decision in this personal injury action is the Plaintiffs’ Motion to Compel Responses to Deposition Questions that were put to Edward Gosson, an employee of Defendant Life Care Centers of America, Inc. (“Life Care”). Counsel for this Defendant instructed Gosson not to answer certain questions from Plaintiffs’ deposing lawyer, on the ground that such questions—which inquired into the substance of communications between Gosson and Life Care’s attorney that occurred during a brief break in the proceeding—intruded into the attorney-client privilege. The question joined in Plaintiffs’ motion is whether and in what circumstances a deponent may communicate with his counsel during the pendency of a deposition without thereby waiving the attorney-client privilege that would otherwise insulate such communication from discovery. Plaintiffs argue, in effect, that all mid-deposition communications between defense counsel and deponent represent an improper form of witness coaching, thereby effecting a forfeiture of the attorney-client privilege. By this motion, Plaintiffs seek a declaration that defense counsel’s communication with Gosson during the deposition break was an improper interference with their right to conduct discovery, entitling them to access the substance of the communication as a sanction for such discovery abuse.
BACKGROUND
This dispute grows out of a personal injury claim in which Plaintiffs allege that Janeece Chesbrough slipped and fell on a patch of ice in Life Care’s parking lot. Life Care’s defense has rested, at least in part, on the contention that its maintenance staff diligently monitor the parking lot for unsafe conditions, and did so on the date of Ms. Chesbrough’s accident. During a deposition conducted on January 10, 2013, however, Gosson, a maintenance technician employed by Life Care, testified that responsibility for clearing the company’s parking lot of ice and snow rested entirely with third-parly contractor and co-defendant Glen Hines.
Shortly after Gosson testified that Life Care’s housekeeping and maintenance staff were not responsible for snow and ice removal in the Defendant’s parking lot, counsel for Defendant Hines received an unexpected phone call. Hines’ lawyer requested a short recess to take the call (which he indicated might be in the nature of an emergency), and all parties agreed. The deposition suspended at 10:34 a.m. Hines’ lawyer left the room by himself to take the call, and Gosson and his attorney stepped out together to confer *630 privately. At the time of this break, which was not initiated by Gosson or his lawyer, no question was pending from the Plaintiffs’ counsel. The break lasted exactly two minutes, during which all parties agree that Gosson and his lawyer conversed outside of the hearing of deposing counsel and the stenographer.
When the deposition resumed, Plaintiffs’ counsel inquired of Gosson what he and his lawyer had discussed during the recess. Counsel for Gosson objected, citing attorney-client privilege as her basis, and directed Gos-son not to answer. The deposition then went forward, and Gosson proceeded to diverge from his prior testimony (asserting that he and his maintenance coworkers were, in fact, responsible for inspecting the parking lot and clearing it of snow and ice). Plaintiffs’ counsel, however, made no attempt to explore through further subject matter interrogation the apparent inconsistency. Instead, believing that Gosson’s changed testimony reflected impermissible coaching by counsel during the break, Plaintiffs moved for an emergency order compelling Gosson to answer questions regarding what he and his lawyer discussed.
DISCUSSION
Plaintiffs’ motion, and the argument advanced in support of it, proceeds from the premise that Defendant’s counsel interfered with the discovery process through improper coaching of his client-witness during an unscheduled break in the deposition. There is, however, very little evidence to support this contention. The deposition in this case was not attended by the sort of lawyer-led disruptions one typically encounters in episodes of sanctionable discovery abuse. There were no lengthy speaking objections to questions; there was no argumentative speechifying for the record; there were no comments or requests for clarification interjected from defense counsel to signal how the witness should answer particular questions; there was no artfully timed break-taking with either questions pending or clear lines of inquiry interrupted; there were no objections inappropriate to the deposition setting (such as on relevance grounds); and there were no improper instructions to the witness not to answer based on grounds other than privilege. The lone conference between Gosson and his counsel at the center of Plaintiffs’ motion, which lasted just two minutes, occurred during an unanticipated break requested by a different lawyer; and the direction of this witness not to answer a question posed in its wake was, on its face, intended to preserve a legal privilege. These are not the sort of circumstances that courts in the Commonwealth have characterized as abusive. See generally P. Lauriat, “Rule 30(c): A Beginning to the End of Deposition Abuse, ” Boston Bar Journal 8 (November/December 2002).
These facts candidly acknowledged, Plaintiffs nevertheless insist that the brief conference between Gos-son and his counsel that occurred amounted to impermissible coaching per se, and without more entitle them to pierce the attorney-client privilege that would otherwise attach to such communication and shield it from discovery. This Court does not agree.
Plaintiffs rely for their argument principally on the text of and Reporter’s Notes to Mass.R.Civ.P. 30, and upon a line of discovery abuse cases beginning with the Eastern District of Pennsylvania’s seminal decision in Hail v. Clifton Precision, 150 F.R.D. 525 (E.D.Pa. 1993). Turning first to Rule 30, the Court acknowledges that the SJC amended this Rule in 1998 to address, in substantial part, the evils of witness coaching by lawyers defending civil depositions. Rule 30(c) thus nowprovides that, during a deposition, objections “shall be stated concisely and in a non-argumentative and non-suggestive manner.” Mass.RCiv.P. 30(c). The amended Rule likewise prohibits instructions to a deponent not to answer a question except where a testimonial privilege may exist or some other legal protection against disclosure might apply. See Mass.RCiv.P. 30 (Reporter’s Notes 2001). Addressing the issue of mid-deposition witness coaching in the context of private attorney-client conferences, the Reporter’s Notes to Rule 30 go on to acknowledge the troubling reality that lawyers have practiced this particular brand of ventriloquism in ways that evade the text but violate the intent of the Rule. The Reporter’s Notes thus state:
[S]ome attorneys, cognizant of the prohibition against suggestive comments or hints during the deposition, may accomplish the same result by seeking to confer with the client in private prior to the client answering the question. It appears that the rule does not permit such conferences except where appropriate to preserve a privilege or protection against disclosure ... In other circumstances [ii.e., ones not involving the invocation of a legal privilege], . . . the use of private conferences between lawyer and deponent would serve to provide an end-run around the 1998 rule against suggestive objections and the general rule that examination of witnesses at depositions “may proceed as permitted at the trial.” (Rule 30(c).) Just as a lawyer may not interrupt the questioning of a witness in order to confer in private and develop strategy with the witness, nor should the lawyer be allowed to interrupt the flow of questions at a deposition. Nor may the deponent stop the deposition in order to seek the advice of counsel (except in the case of a privilege or protection against disclosure).
Mass.R.Civ.P. 30 (Reporter’s Notes 2001).
This Court acknowledges the salutary purposes and effects of the amendments to Rule 30, and credits the Reporter’s Notes with providing useful guidance on the intended reach of a rule whose terms could not possibly anticipate every maimer of mischief lawyers might bring to the deposition setting. But the terms of Rule 30(c), even as amplified in the Reporter’s Notes, do not remotely justify the extraordinary sanction—viz., wholesale abrogation of the attorney-client privilege—that Plaintiffs seek in this case. As set forth ante, Defendant’s counsel *631 did nothing to violate either the provisions or purposes of Rule 30(c). She did not register objections in a narrative, argumentative or suggestive manner. She did not interrupt the examination of her client, or do anything to interfere with the flow of opposing counsel’s questioning. The break that occurred here was requested by a different attorney, and by all accounts had nothing to do with advice-seeking on the part of the deponent. There was no question pending at the time this break commenced, another circumstance suggestive of coaching not present in the case at bar. Finally, Defendant’s counsel did instruct Gos-son not to answer one particular question—that seeking disclosure of what he had discussed with his lawyer during the break—but this instruction was intended to preserve a plainly applicable attorney-client privilege. It was, therefore, authorized by the express terms of Rule 30(c). In these circumstances, the Court is unable to see how anything that occurred in this case offended the provisions or principles of Rule 30(c), as Plaintiffs insist in their motion.
Plaintiffs nonetheless argue for an expansive construction of Rule 30(c) that, in effect, equates all forms of lawyer-witness communication during the course of a deposition (and appurtenant breaks) with impermissible coaching. If all attorney-client conferences during a deposition break constitute coaching (irrespective of who called for the break or in what circumstances), the argument goes, then the only righteous remedy is to allow for unfettered questioning into the substance of what lawyer and deponent discussed. In support of this position, Plaintiffs cite principally to the case oí Hall v. Clifton Precision, 150 F.R.D. 525 (E.D.Pa. 1993). Because Hall represents Ground Zero on this subject, its holding and rationale are worth reviewing at some length. In Hall a federal trial court addressed the situation where defendant’s counsel attempted to ask the deponent about a document handed to him during the deposition, and deponent’s counsel insisted upon breaking to review the document with the witness before he answered questions about it. An immediate telephone call to the presiding judge resulted in a suspension of the proceeding; and the court subsequently issued a ruling in which it announced that “conferences between witness and lawyer are prohibited both during the deposition and during recesses.” Hall, 150 F.R.D. at 529. Explaining its rationale, the Hall court stated:
The underlying purpose of a deposition is to find out what a witness saw, heard or did—what the witness thinks. A deposition is meant to be a question-and-answer conversation between the deposing lawyer and the witness. There is no proper need for the witness’s own lawyer to act as an intermediary, interpreting questions, deciding which questions the witness should answer, and helping the witness to formulate answers. The witness comes to the deposition to testify, not to indulge in a parody of Charlie McCarthy, with lawyers coaching or bending the witness’s words to mold a legally convenient record. Therefore, I hold that a lawyer and client do not have an absolute right to confer during the course of the client’s deposition.
Hall 150 F.R.D. at 528.
The Hall court further reasoned that, inasmuch as Rule 30 provides that depositions are to be conducted under the same testimonial rules that govern trials (in which proceedings lawyers may not confer with clients while they are giving testimony), the same restrictions against private conferences should apply both in and outside the deposition process itself:
The same is true at a deposition. The fact that there is no judge in the room to prevent private conferences does not mean that such conferences should or may occur. The underlying reason for preventing private conferences is still present: they tend, at the very least, to give the appearance of obstructing the truth.
[[Image here]]
These rules also apply during recesses. Once the deposition has begun, the preparation period is over and the deposing lawyer is entitled to pursue the chosen line of inquiry without interjection by the witness’s counsel. Private conferences are barred during the deposition, and the fortuitous occurrence of a coffee break, lunch break or evening recess is no reason to change the rules. Otherwise, the same problems would persist. A clever lawyer or witness who finds that a deposition is going in an undesired or unanticipated direction could simply insist on a short recess to discuss the unanticipated yet desired answers, thereby circumventing the prohibition on private conferences.
Hall 150 F.R.D. at 528-29.
On the basis of this reasoning, the Hall court held that all private conferences between defending counsel and deponent were out of bounds once the witness swore his oath. This prohibition would apply irrespective of whether the lawyer or witness requested the conference (id. at 528), regardless of the nature or duration of the break (id. at 529), and was not overcome by considerations of a client’s right to counsel and due process:
A lawyer, of course, has the right, if not the duty, to prepare a client for a deposition. But once the deposition begins, the right to counsel is somewhat tempered by the underlying goal of our discovery rules: getting at the truth.
Hall, 150 F.R.D. at 528. Placing a high gloss on the meaning of “somewhat tempered,” the Hall court then flatly held that private conferences occurring between counsel and witness during a deposition enjoyed no attorney-client privilege. Such conferences were thus “fair game for inquiry by the deposing attorney to ascertain whether there has been any coaching and, if so, what.” Id. at 529 n.7.[1]
*632 Plaintiffs argue that the rules and reasoning of Hall should be adopted in Massachusetts, and point out that a lone Justice of this Court at least appeared to embrace the decision in a discovery ruling issued some 20 years ago. See Holland v Fisher, 3 Mass. L. Rptr. 167 (Mass.Super.Ct. 1994) (Gershengorn, J.).[2] This Court acknowledges that Hall has gained a modest following in the courts since its publication in 1993. See, e.g., In the Matter of Anonymous Member of the South Carolina Bar, 552 S.E.2d 10, 15 (S.Car.Sup.Ct. 2001) (“Having adopted the Hall approach, our Court requires attorneys in South Carolina to operate under the most sweeping and comprehensive rules on deposition conduct in the nation”); Armstrong u. Hussman Corp., 163 F.R.D. 299, 303 (E.D.Mo. 1995) (“Attorneys are also prohibited from acting as an intermediary during their client’s deposition—from interpreting opposing counsel’s questions; having private conferences with their client during the deposition; and conferring with their client about a document presented by the deposing attorney”) (citing Hall with approval)); Chapsky v. Baxter Mueller Division, Baxter Healthcare Corp., 1994 U.S. Dist. LEXIS 9099, at *4 (N.D.I11. 1994) (“private conferences during a deposition between a deponent and his or her attorney for any purpose other than to decide whether to assert a privilege are not permitted”). However, the greater weight and better reasoned authority that has evolved in the area of lawyer-client conferences during depositions has come to reject Hall as an untenable and impractical interference with the attorney-client privilege and right to counsel. In its zeal to root out witness coaching from civil deposition practice, Hall prescribes a remedy now widely regarded as more destructive than the ill it seeks to cure. In the absence of any appellate guidance in Massachusetts, therefore, this Court elects to align itself with these more persuasive authorities, and concludes that the rules of Hall sweep too broadly to be adopted in this jurisdiction.
As noted ante, Hall has come in for substantial (and, in the view of this Court, well warranted) criticism since its issuance two decades ago. The leading and most thorough critique of the decision is the federal District of Nevada’s opinion in, In re Stratosphere Corp. Securities Litigation, 182 F.R.D. 614 (1998). In Stratosphere, the court acknowledged the valid jurisprudential concerns that had animated Hall, but concluded that its corrective sanction[3] worked an unjustifiable encroachment upon the right to counsel. Stratosphere's reasoning is persuasive, and merits extended recitation:
This Court agrees with the Hall court that a questioning attorney is entitled to have the witness, and the witness alone, answer questions. When there is a question pending, neither the deponent nor his counsel may initiate the interruption of the proceeding to confer about the question, the answer, or about any document that is being examined, except to assert a claim of privilege ... If the deponent does not understand the question, or the meaning of a word or phrase, or even if the deponent has a question about a document, he or she should ask the questioning attorney. If the deponent lacks knowledge or understanding, then the deponent should say so, not seek understanding or direction about how to answer the question from his or her attorney. The interrogating counsel has the right to the deponent’s answers, not an attorney’s answers.
[But] while this Court agrees with the Hall court’s identification of the problem, it feels that Hall goes too far in its solution. *** It is one thing to preclude attorney-coaching of witnesses. It is quite another to deny someone the right to counsel. Even the court in Hall notes in footnote 5 that the right to counsel is an issue that has not been decided in this context. It is this Court’s opinion that the right of counsel does not need to be unnecessarily jeopardized absent a showing that counsel or a deponent is abusing the deposition process.
[[Image here]]
It is this Court’s experience, at the bar and on the bench, that attorneys and clients regularly confer during trial and even during the client’s testimony, while the court is in recess, be it mid-morning or mid-afternoon, the lunch recess, and the evening recess. The right to prepare a witness is not different before the questions begin than it is during (or after, since a witness may be recalled for rebuttal, etc., during trial). What this Court and the Federal Rules of Civil Procedure seek to prevent is coaching the witness by telling the witness what to say or how to answer a specific question. We all want the witness’s answers, but not at the sacrifice of his or her right to the assistance of counsel.
Furthermore, consultation between lawyers and clients cannot be neatly divided into discussions about ‘testimony’ and those about ‘other matters.’ To deny a client any right to confer with his or her counsel about anything, once the client has been sworn to testify, and further to subject such a person to unfettered inquiry into anything which may have been discussed with the client’s attorney, all in the name of compliance [with] the rules, is a position this Court declines to take.
While this Court agrees with the Hall court’s goals, it declines to adopt its strict requirements. This Court will not preclude an attorney, during a recess that he or she did not request, from making sure that his or her client did not misunderstand or misinterpret questions or documents, or attempt to rehabilitate the client by fulfilling an attorney’s ethical duly to prepare a witness. So long as attorneys do not demand a break in the questions, or demand a conference between question and answers, the Court is confident that the search for truth will adequately prevail.
Stratosphere, 182 F.R.D. at 621 (citations omitted).
Numerous other courts have since followed the lead of Stratosphere in rejecting Hall as a remedy worse *633 than the disease. In McKinley Infuser, Inc. v. Brian D. Zdeb, 200 F.R.D. 648 (D.Colo. 2001), for example, the court flatly denied a request by plaintiffs seeking Hall sanctions against a party who conferred with counsel during a deposition recess. The court wrote:
The relief requested by the plaintiffs here is particularly inappropriate. It would have the effect of barring [defendant] from conferring with his counsel for the entire period between the sessions of his deposition, in this case several weeks. Taken to its logical extreme, the plaintiffs’ argument would bar consultation between a party and his lawyer from the time of his deposition through trial, because there might be “coaching” which would cause a party-witness to alter his deposition testimony at trial. That result is absurd.
I agree with the reasoning of In re Stratosphere [that] the truth finding function is adequately protected if deponents are prohibited from conferring with their counsel while a question is pending; other consultations, during periodic deposition breaks, luncheon and overnight recesses, and more prolonged recesses ordinarily are appropriate.
McKinley Infuser, 200F.R.D. at 650. Accord State of West Virginia v. King, 520 S.E.2d 875, 882-83 (W.Va. 1999) (“we hold that an attorney may confer with his or her client witness during a recess or break in a discovery deposition, so long as the attorney did not request a break in the questions or request a conference between a question and an answer for an improper purpose. The right to counsel should not be jeopardized absent a showing that the attorney or deponent is abusing the deposition process. To find otherwise would not only have the potential to jeopardize the right to counsel, but would indeed seem to presume that lawyers would not adhere to the Rules of Professional Conduct. We presume that lawyers will follow the ethical tenets of our profession”); Murray v. Nationwide Better Health, 2012 U.S. • Dist. LEXIS 120592, at *12-13 (C.D.Ifl. 2012) (“In light of the reasoning of Stratosphere and McKinley . . . the Court finds that [the trial judge’s] blanket prohibition on defense counsel having a private conference with [his client] during the deposition is overly broad. Therefore, this Court holds that defense counsel may have a private conference with [a client] during a recess that counsel did not request (and so long as a question is not pending), during the hour break already scheduled by the Court, and at any time for the purpose of determining whether a privilege should be asserted”); Odone v. CrodaInterna-tional, PLC, 170 F.R.D. 66, 69 (D.C. Cir. 1997) (distinguishing Hall because consultation between lawyer and witness took place during a recess the lawyer did not request, and was intended to discern whether the client had misunderstood or misinterpreted adversary’s questions, and then refusing to apply the “litany of deposition restrictions and prohibitions it outlines”); Ecker v. Wisconsin Central, Ltd, 2008 U.S. Dist. LEXIS 121200, at *3 (E.D.Wis. 2008) (finding that “mere fact that counsel for the defendant privately conferred with the witness during a break after the plaintiff completed his examination does not warrant sanctions”). Indeed, even a decision cited by Plaintiffs in support of their motion refused to embrace the sweeping strictures on attorney-client communication prescribed by HalL See In re PSE&G Shareholder Litigation, 726 A.2d 994, 997 (N.J.Super.Ct.Ch.Div. 1998) (“Although this court believes that the decision of the court in Hall v. Clifton Precisionis laudatory, the court does not believe that the blanket restrictions should be imposed in every case”; allowing counsel and witness to confer after deposition has concluded for the day even if it is scheduled to resume the following day).
After due consideration of the issue, this Court shares the view that Hall is a bridge too far, imposing a rule of restriction that intrudes too deeply into the lawyer-client relationship and its vital privilege of confidentialily. See Upjohn Co. v. U.S., 449 U.S. 383, 389 (1981) (‘The lawyer-client privilege rests upon the need for the advocate and counselor to know all that relates to the Court’s reasons for seeking representation if the professional mission is to be carried out”). This privilege is simply too important to our adversarial system of justice to be sacrificed in the service of the discovery principles Hall seeks to defend.
The vice of Hall is made clearer by the fact that existing rules of civil procedure and canons of ethics already provide ample safeguards against the more serious problems posed by witness-coaching. Lawyers are, after all, prohibited from counseling or assisting a witness to testify falsely, from offering evidence the lawyer knows to be false, from unlawfully obstructing another party’s access to evidence, and from interfering with an opposing counsel’s deposition in a manner prohibited by the terms of Rule 30(c). See generally Mass.R.Prof.Cond. 3.4. These restraints already do much to check the robust advisory role that lawyers no doubt play in other aspects of the discovery process—be it in the preparation of answers to interrogatories, responses to requests for admission, and even deposition errata. In each of these circumstances, lawyers enjoy the freedom to counsel clients confidentially about matters of substance, subject to just two overriding conditions: 1) adherence to the ethical bar to a lawyer’s suborning perjurious testimony, and 2) the requirement that the client ultimately swear an oath attesting to the truth of the representations made in such documents to the best of his or her knowledge and belief. Neither Hall nor any other decision following it has ever articulated why the balance should be struck so differently, and at the expense of the attorney-client privilege, in the context of the part lawyers play when defending client depositions. This Court sees no reason in law or logic why it should be so.
That being said, if a deposing lawyer comes to believe in good faith that an opposing counsel has improperly coached a witness during the course of a deposition—e.g., if the timing of a requested break or *634 a post-recess change in a witness’s testimony suggest the same—then the lawyer has one additional tool at his disposal. He may in this circumstance inquire of the witness both as to the reason for the break and/or the change in testimony.[4] If the witness invokes the attorney-client privilege in response to such inquiry, deposing counsel may properly insist on the record that the deponent acknowledge the fact that a conference with counsel was held, the subject matter (but not substance) of the conference to which privilege is claimed, and the time, place and participants in the conference. This practice is, of course, consistent with what the Massachusetts Rules of Civil Procedure and Standing Orders of this Court already require when litigants assert privilege in the context of written discovery. See Mass.R.Civ.P. 26(b)(5); Superior Court Standing Order 1-09(3) fb). The Court believes that the availability of such recourse will in most circumstances deter bad behavior by lawyers defending client depositions. In all events, though, it will yield deposing counsel both the information needed to test the legitimacy of the asserted privilege, and the grounds to argue that the credibility of the deposed witness’s testimony has been compromised by attorney coaching. Indeed, there is some authority that Massachusetts evidence law might allow for an instruction that adverse inferences may be drawn against a party in civil litigation who invokes the attorney-client privilege when declining to answer an opposing party’s question. See Mass.G.Evid. 525; P. Liacos, M. Brodin & M. Avery, Hanbook of Massachusetts Evidence, at Sec. 13.4.9 (7th ed. 1999).
In sum, this Court finds that the existing rules of procedure and ethics are adequate to prevent improper witness coaching during depositions, and accordingly rejects the more expansive restrictions of Hall as an unwarranted interference with the right to attorney-client privileged counsel. On the matter of lawyer-client conferences in this case, therefore, and in the interest of clarity, the undersigned will enforce the following rules going forward:
1) Neither lawyer nor witness may confer (other than about the decision of whether to assert a privilege) while a deposing lawyer’s question is pending.
2) Neither lawyer nor witness may request or initiate a break or recess for the purpose of conferring about the substance of the witness’s testimony (other than in respect to the decision of whether to assert a privilege) in the middle of a deposing lawyer’s line of questioning into an identifiable subject matter.
3) Lawyer and witness may otherwise confer on any matter during all scheduled and unscheduled deposition breaks and recesses. If, however, following any break or recess, a deposing lawyer has a good faith basis to believe that inappropriate witness coaching on matters of substance has occurred, he may make inquiry of the witness into the circumstances and subject matter of the same and require that any claim of privilege interposed to justify a refusal to answer be set forth on the record in the manner described above.[5]
CONCLUSION
For all the foregoing reasons, the Plaintiffs’ Motion to Compel Responses to Deposition Questions is DENIED.

The lone exception permitted under the holding of Hall is that lawyer and client may confer “about whether to assert a privilege.” Id. at 529-30.

Although Judge Gershengorn subscribed to the core principle of Hall and quoted liberally from the decision's colorful rhetoric, it is not at all evident in her ruling that she in fact adopted the most critical component of its holding (and what Plaintiffs press for in their present motion). Judge Gershengorn was faced with a situation that differs from the case at bar in one rather important respect. In Holland, the defense lawyer interrupted deposing counsel’s line of questioning, and chose to confer with his client-witness while a question that had been asked remained unanswered. The Court found this objectionable, as would the undersigned, and emphatically rejected the defendant’s rejoinder that lawyer and client have an absolute right to confer at any time they please. In the course of her ruling, Judge Gershengorn cited to the principles expressed in Hall and Plaintiffs quote her language at length in their Memorandum. Nowhere, however, does Holland hold that an attorney who confers with a client during a deposition—even in these concededly inappropriate circumstances—thereby waives the attorney-client privilege that would otherwise attach to such communication. This, of course, is the neutron bomb lurking in Hall, it is the principle other courts have found so unacceptable in that decision (see infra); and it lies at the heart of the sanction Plaintiffs here seek. Put anotherway, the language of Holland that embraces Hailshould not obscure two important points. First, this Court would have reached the same conclusion that Judge Gershengorn did if presented with the facts of Holland. Even applying its own more permissive standards in the matter of lawyer-witness communication in the deposition setting, outlined infra, this Court would have sanctioned the behavior of defense counsel in that case. More importantly, this Court does not regard the essential holding of Holland (even supported, as it is, by the language of Hall Judge Gershengorn quotes) as inconsistent with the decision reached herein.

Nhe Stratosphere court accurately summarized the reach of Hall’s rule as follows:
The Hall decision effectively precludes counsel and his witness from speaking to each other once a deposition has begun, until it is finished. If they so much as speak to each other, opposing counsel then has the right to inquire into every thing that was said.
Stratosphere, 182 F.R.D. at 620.

Ihis is how the law already deals with the circumstance in which witnesses change substantive testimony (no doubt with the advice and assistance of counsel) in post-deposition errata. See, e.g., De Seversky v. Republic Aviation Corp., 2 F.R.D. 113, 115 (E.D.N.Y. 1941) (permitting further examination of witness who changed testimony on material matter). This Court can discern no reason why such an approach will not suffice in the context of a witness who changes testimony mid-deposition, and why the more radical sanctions of Hall are required.

Plaintiffs in this case may, at their own expense, re-open the Gosson deposition for the limited purpose of inquiring into the apparent change in the witness’s testimony regarding who is and is not responsible for snow and ice removal in the Life Care parking lot. In the event the deponent is instructed not to answer any question on the grounds of attorney-client privilege, Defendant’s counsel will state for the record the complete basis for the privilege so claimed.